119 P.3d 608

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Spencer MYERS, Defendant–Appellant.**

**No. 25349.**

Intermediate Court of Appeals of Hawai'i.

Aug. 1, 2005.

Certiorari Denied Sept. 9, 2005.

Mimi DesJardins, On the briefs, for defendant-appellant.

Simone C. Polak, deputy prosecuting attorney, County of Maui, On the briefs, for plaintiff-appellee.

WATANABE, Acting C.J., LIM and NAKAMURA, JJ.

Opinion of the Court by WATANABE, Acting C.J.

Defendant–Appellant Spencer Myers (Myers or Mr. Myers) urges this court to reverse the August 22, 2002 Judgment of the Family Court of the Second Circuit (the family court)[1] that convicted and sentenced him for abuse of a family or household member, in violation of Hawaii Revised Statutes section 709–906 (Supp.2003), claiming that the family court failed to obtain a valid waiver of his constitutional right to a jury trial.

We disagree and accordingly, affirm.

## I. BACKGROUND

Pursuant to a written Complaint filed on March 18, 2002, Myers was charged, in relevant part, as follows:

> That on or about the 10th day of March, 2002, in the County of Maui, State of Hawaii, [Myers] did intentionally, knowingly or recklessly engage in and cause physical abuse of a family or household member, to wit, Marina Yamada, thereby committing the offense of Abuse of Family and Household Member in violation of Section 709–906 of the Hawaii Revised Statutes.

Myers appeared for arraignment and plea on March 22, 2002. Prior to calling each individual case scheduled that afternoon, the family court[2] addressed all of the defendants then present in the courtroom and gave a mass advisement that comprehensively explained, inter alia, the right to a jury trial.

The family court advised the assembled defendants, in relevant part, as follows:

> Now, most of these charges, if not all of them, are at least what we call a misdemeanor. That term means if you are—if you were convicted, you could be sentenced up to one year in jail, maximum sentence in this case.

> Now, the constitution of the State of Hawaii, the laws in this state, say that any person who is charged with a misdemeanor has by law a constitutional right to a trial, and that trial is with a jury.

> ... What a jury trial means is when you come to court on your trial date, there will be a group of citizens from this county.

> From that group, you, together with the prosecution, will be involved in selecting 12 people, and an alternate usually, to sit together as a group we call a jury.

> And in a jury trial, it's the jury that once the trial starts, sits there and listens to all of the evidence presented by the prosecution, which would be witnesses who would be called to testify. There may be documents, pieces of paper. There may be physical evidence, things, and they present their case. And their job is to present enough evidence to show beyond a reasonable doubt that you've committed the offenses.

> Once the State finishes its part of the case, you, as the defendant, would have a right also to present evidence. You could call witnesses to come testify for you, present document [sic], photographs, any evidence you think would help prove that you didn't commit the offense.

> And at the trial you can—if you want to, but you would not be required to—testify yourself. If you want to get up to take an oath to tell the truth, answer questions, tell your side of the story, you can do that at the trial, but you also can just do nothing.

> Nobody can force you to take the stand. So the prosecution couldn't put you up here and ask you questions were you there, did you do it, or whatever it may be. All right. They are not allowed to do that.

---

**1.** The Honorable Reinette W. Cooper presided.

**2.** The Honorable Eric G. Romanchak presided.

But if you voluntarily take the stand as a witness because you want to tell your side of the story, you can do that. But if you do, then the prosecution will have the right to ask you questions about anything that you've testified to. We call that cross-examination.

Now, when a trial is all over, the evidence is presented, then the judge tells the jury you got to decide this case. And the jury would have to find by the evidence that there's enough to show beyond a reasonable doubt that you've committed the offense.

And it takes all 12 people to agree that there's enough evidence showing beyond a reasonable doubt that you've committed the offense. If all 12 people agree, they would return a verdict[,] a decision, guilty. All right.

Now, it's possible that all 12 people would agree that the State didn't prove enough evidence. They just said, look, all of us agree there wasn't enough evidence to show beyond a reasonable doubt that you committed the offense. Then they would return the verdict of not guilty.

There are occasions when 12 people in the jury can't agree one way or the other. Some decide one way; some decide the other, and they can't—after talking about it—all agree one way or the other. We call that a mistrial. Some people refer to it as a hung jury.

In that situation, what happens is the case then would be set for another trial, new trial, start all over, new jury, prosecution has the same duty. And sometimes the second time the jury can decide one way or another. And if they can't decide that time, there's been cases where it gets a third time. Not too likely, but it does happen.

It's also possible after the judge—after the jury—if they just can't decide says, you know, I find there just wasn't enough evidence even close to prove the charge; therefore, I order the case dismissed. The judge has the right to do that. Doesn't happen very often. They usually leave it up to the jury.

Now, you do have the right—any defendant has the right to say I don't want the jury trial. I just want to have my case decided by a judge. It's your decision. Nobody is forcing to [sic] you to do one thing or the other. Doesn't make any difference to the Court.

We have jury trials on the fourth floor. We have trials here with the judge here on the third floor. You get to choose.

If you choose to have a jury trial, what would happen is I will set the date for you to appear next week in the Circuit Court. The judge assigned to the case upstairs will decide your trial date.

And you'll have to appear, go through the trial, and it will be handled up in this courtroom. If you waive your right to jury trial, you don't want the 12 people, I'll tell you what date you have to come to court for trial in the Family Court; that's where you are now.

And I'll give you the date for your trial, time, courtroom. And the Family Court, what we do—we also set what we called pretrial. It means you actually have to come back to court before your trial date. It's on a Friday and we have a lot of cases set for trials throughout the week.

We make sure all that [sic] the cases are ready to go. Those that are not quite ready to go for one reason or another, we may have to put on (inaudible). If we have too many cases going to trial on one day, then we try to spread them out on other days. The purpose is to get organized, make sure everybody is ready. So that when your trial comes, it's held on that date. Nobody is delayed, and it's over; the trial will be over.

Now, sometimes people decide between today if they entered a plea of not guilty and when they come back from the pretrial date they have talked to their lawyer, they looked at the case, they've seen the police report, they have investigated it, and decide, you know, I just don't want to go through the trial. I'm going [sic] change my plea from not guilty to either guilty or no contest.

That's what you do on the pretrial date. All right. So it's over with a [sic] on that

pretrial date. So that's what's going to happen today.

Now, when you come forward, you'll have a right to enter one of three different pleas. If you enter a plea of not guilty, then you have to decide do I want the jury trial, [or] do I want to waive it?

. . . .

All right. I think that's about all I have to say. When you [sic] case is called, come forward. I'm going to ask you do you understand the charge? Yes. Were you here when I gave my opening statement? If you say yes to that, did you understand my explanation about your rights[?]

One thing I want to explain a little bit further, do you understand what a jury trial is[?] Is it your voluntarily [sic] decision to waive your right to jury trial if that's what you want to do[?] If you answer yes to all those questions, that I assuming [sic] you plead not guilty and set a trial date, et cetera.

. . . .

That's all I have to say then. We're going to call the cases on today's calender [sic].

Thereafter, the family court individually arraigned each defendant. When it was Myers' turn to be arraigned, the following colloquy took place:

[DEPUTY PUBLIC DEFENDER]: The record should reflect that Spencer Myers is present. He's represented by deputy public defender Jim Rouse. And, in fact, a written complaint was provided to us.

Your Honor, we're prepared to waive the public reading of that charge, enter a plea of not guilty, waive our right to a jury trial and ask this complaint be set in the Family Court before a Family Court judge.

THE COURT: Mr. Myers, you understand what Mr. Rouse just told me?

[MYERS]: Yes.

THE COURT: Were you here earlier when I gave my opening statement, explained your rights including your right to a trial by jury?

[MYERS]: Yes.

THE COURT: Do you understand that explanation?

[MYERS]: Yes.

THE COURT: And is it your decision this afternoon to waive or give up your right to jury trial and have the matter set for trial in the Family Court?

[MYERS]: Yes.

THE COURT: Is that decision one that you've made yourself voluntarily?

[MYERS]: Yes.

THE COURT: Do you have any questions at this time?

[MYERS]: No.

THE COURT: All right. I'm satisfied that Mr. Myers understand [sic] the charge against[ ] him[,] understands what his right to trial by jury is; that he voluntarily waived that right. Therefore, the complaint in this case is to be set for trial in the Family Court[.]

Following a bench trial held on June 20, 2002, the family court found Myers guilty and sentenced him to two years' probation. This timely appeal followed.

## II. DISCUSSION

"The validity of a criminal defendant's waiver of his or her right to a jury trial presents a question of state and federal constitutional law." *State v. Friedman,* 93 Hawai'i 63, 67, 996 P.2d 268, 272 (2000). Questions of constitutional law are reviewed *de novo* under the right/wrong standard, with the appellate court "exercising [its] own independent constitutional judgment based on the facts of the case." *Id.*

We thus review *de novo,* Myers' contention that the family court erred by failing to obtain a valid waiver of his constitutional right to a jury trial.

### A. *General Principles Governing the Waiver of the Right to a Jury Trial*

Under Hawai'i law, a criminal defendant's waiver of his or her constitutional right to a jury trial must be a "knowing, intelligent, and voluntary relinquishment of a known right." *Id.* at 68, 996 P.2d at 273

(citing *Reponte v. State*, 57 Haw. 354, 361, 556 P.2d 577, 583 (1976)). In *Friedman*, the Hawai'i Supreme Court articulated the general principles governing the validity of a criminal defendant's waiver of a jury trial, as follows:

Hawai'i Rules of Penal Procedure ... Rule 5(b)(1) (1996) requires that, in appropriate cases, the district court shall "inform the defendant of the right to jury trial in circuit court." " 'Appropriate cases' arise whenever the accused has a constitutional right to a jury trial." *State v. Ibuos*, 75 Haw. 118, 120, 857 P.2d 576, 577 (1993) (citations omitted); *see also* article I, section 14, of the Hawai'i Constitution (1978); sixth amendment to the United States Constitution.... For a valid waiver of the right to a jury trial, the trial court has a duty to inform the accused of that constitutional right. The colloquy in open court informing a defendant of his [or her] right to a jury trial at arraignment serves several purposes: "(1) it more effectively insures voluntary, knowing and intelligent waivers; (2) it promotes judicial economy by avoiding challenges to the validity of waivers on appeal; and (3) it emphasizes to the defendant the seriousness of the decision." The failure to obtain a valid waiver of this fundamental right constitutes reversible error.

A waiver is the knowing, intelligent, and voluntary relinquishment of a known right. Thus, "to determine whether a waiver was voluntarily and intelligently undertaken, *this court will look to the totality of facts and circumstances of each particular case." Where it appears from the record that a defendant has voluntarily waived a constitutional right to a jury trial, the defendant carries the burden of demonstrating by a preponderance of the evidence that his/her waiver was involuntary.*

. . . .

Friedman cites *United States v. Duarte–Higareda*, 113 F.3d 1000 (9th Cir.1997), to support his contention that his colloquy was insufficient for him to have voluntarily waived his right to a jury trial. In *Duarte–Higareda*, the defendant, who was not fluent in English, had signed a jury waiver form, preprinted entirely in English, but the record was silent as to whether the written waiver had been translated into Spanish for him. Subsequently, at his arraignment, defendant's counsel also informed the district court that defendant wished to waive his right to a jury trial. Although a Spanish interpreter was present to assist the defendant, the district court never directly addressed the defendant to verify his understanding of the jury waiver. The defendant was found guilty following a bench trial and then appealed.

The United States Court of Appeals for the Ninth Circuit vacated the conviction and sentence, stating that the record indicated that the defendant possessed the "special disadvantage or disability" of not speaking English, which bore upon his ability to understand the waiver of a jury trial, thereby requiring the district court to conduct a colloquy with the defendant to ensure a voluntary waiver. Thus, the language barrier was a " 'salient fact' that gave notice to the district court that Duarte's waiver 'might be less than knowing and intelligent.' " The Ninth Circuit noted that, to ensure a voluntary waiver, the district court should have directly informed the defendant that "(1) twelve members of the community compose a jury, (2) the defendant may take part in jury selection, (3) a jury verdict must be unanimous, and (4) the court alone decides guilt or innocence if the defendant waives a jury trial."

Friedman contends that his jury waiver could not be voluntary or knowing because the trial court did not specifically advise him that a jury is comprised of twelve members, that he could take part in jury selection, or that a jury verdict must be unanimous. Thus, Friedman appears to urge this court to adopt a "bright line rule" that a jury waiver can never be voluntary and knowing if a trial court fails to advise a defendant of any of the four aspects of a jury trial, as expressed in the colloquy suggested in *Duarte–Higareda*. As previously noted, however, *Duarte–Higareda* does not stand for the proposition that its suggested colloquy is required in every

case. *Although we are mindful of a criminal defendant's fundamental right to a jury trial and advise the trial court to engage in such a colloquy to aid in ensuring voluntary waivers, we decline to adopt Friedman's contention that the Duarte–Higareda colloquy is constitutionally required in every case.*

Rather than adhering to a rigid pattern of factual determinations, *we have long observed that the validity of a waiver concerning a fundamental right is reviewed under the totality of the facts and circumstances of the particular case. Likewise, we review the validity of a defendant's waiver of his/her right to a jury trial under the totality of the circumstances surrounding the case, taking into account the defendant's background, experience, and conduct.*

*Friedman*, 93 Hawai'i at 68–70, 996 P.2d at 273–75 (citations and original brackets and ellipses omitted; emphases added). Thus, *Friedman* clearly requires us to apply the totality-of-the-circumstances test, and not any bright-line-rule test, in evaluating the validity of a jury trial waiver. Moreover, where the record indicates that a defendant waived his or her right to a jury trial, the defendant "carries the burden of demonstrating by a preponderance of the evidence that [his or her] waiver was involuntary." *Id.* at 69, 996 P.2d at 274.

Since *Friedman* was decided, Hawai'i's appellate courts have applied the totality-of-the-circumstances test in evaluating the validity of a waiver of a jury trial on several occasions. In *State v. Sprattling*, 99 Hawai'i 312, 55 P.3d 276 (2002), for example, the Hawai'i Supreme Court considered circumstances such as the defendant's representation by capable counsel, the district court's confirmation of the defendant's waiver, and the defendant's indication that he understood the advisement, in concluding that a valid jury-trial waiver had occurred. In *State v. Barros*, 105 Hawai'i 160, 95 P.3d 14 (App. 2004), *cert. denied*, 105 Hawai'i 196, 95 P.3d 627 (Aug. 9, 2004), this court, after examining the totality of the facts and circumstances, including the fact that the defendant had received multiple advisements to consult with the public defender, similarly concluded that the defendant had validly waived his jury trial right.

B. *The Use of Mass Advisements as a Method of Obtaining a Waiver*

In misdemeanor cases, it is common practice for courts to administer a mass advisement[3] to a group of defendants. Typically, after the mass advisement is administered, the court will engage in a colloquy with each individual defendant to ensure that the defendant heard and understood his or her rights, including the right to a jury trial. In addressing Myers' arguments on appeal, we must decide an issue of first impression in Hawai'i: Whether a mass advisement is a valid method of informing a misdemeanor defendant of his or her right to a jury trial.

Although Hawai'i appellate courts have not yet spoken on this issue, other jurisdictions have wrestled with the sufficiency of mass advisements. Some courts have approved of the use of mass advisements in informing criminal defendants of their constitutional rights. *See, e.g., People v. Howell*, 178 Cal. App.3d 268, 223 Cal.Rptr. 818, 821 (1986) (permitting mass advisement of constitutional rights by counseling attorneys, if properly done); *Hartman v. Municipal Court for the N. Judicial Dist. of San Mateo County*, 35 Cal.App.3d 891, 111 Cal.Rptr. 126, 127 (1974) (allowing mass advisements and noting that "when a defendant appears in court personally to plead to a misdemeanor offense, the

---

3. This practice has also been referred to as "collective advisement," "mass instruction," "*en masse* advisement," or "mass arraignment." *See, e.g., Stewart v. Justice Court for Avenal Judicial Dist.*, 74 Cal.App.3d 607, 141 Cal.Rptr. 589, 591 (1977) ("collective advisement"); *Jones v. State*, 212 Ga.App. 676, 442 S.E.2d 908, 910 (1994) ("mass arraignment"); *State v. Rowell*, 468 A.2d 1005, 1006 (Me.1983) ("mass instruction"); *Richardson v. State*, 381 Md. 348, 849 A.2d 487, 500 (2004) ("*en masse* advisement"). The description "mass arraignment" is not entirely accurate, as it leaves the impression that the defendants were all *arraigned* at once. The process involved here is the mass *advisement* of rights prior to the arraignment of the individual defendants. For purposes of clarity, we refer to the advisement portion of the arraignment process as a "mass advisement."

practicalities of the crowded inferior courts will permit some deviation from the strict felony procedure so long as the constitutional rights of defendants are respected"); *People v. Shannon*, 121 Cal.App.3d Supp. 1, 175 Cal.Rptr. 331, 334 (1981) (permitting mass advisement prior to arraignment by video presentation).

Other courts have struck down jury trial waivers obtained after the defendant received a mass advisement. In *Jones v. State*, 212 Ga.App. 676, 442 S.E.2d 908 (1994), for example, the Georgia Court of Appeals held that a mass arraignment without an individualized colloquy with the defendant was insufficient to uphold a jury trial waiver:

"'A criminal defendant must personally and intelligently participate in the waiver of the constitutional right to a trial by jury. When the purported waiver of this right is questioned, the State bears the burden of showing the waiver was made both intelligently and knowingly, either (1) by showing on the record that the defendant was cognizant of the right being waived; or (2) by filling a silent or incomplete record through the use of extrinsic evidence which affirmatively shows that the waiver was knowingly and voluntarily made.'" In this case, however, the record does not show that [the defendant] personally, knowingly, voluntarily, and intelligently waived his right to a jury trial. Although the record shows [the defendant] did not demand a jury trial, there is no showing that [he] knew what he was surrendering by not making such a demand and there is no evidence that [he] made a conscious choice to waive his right to a jury trial.

*Id.* at 910–11 (citations omitted).

In *State v. Rowell*, 468 A.2d 1005 (Me. 1983), the Supreme Judicial Court of Maine held that a defendant who asserted that he arrived late at his arraignment proceeding, after the presiding judge had informed the assembled group of the right to jury trial, did not make a voluntary and intelligent waiver of his right to a jury trial. *Id.* at 1006–07. The transcript of the arraignment proceeding in *Rowell* indicated that the defendant approached the bench when his case was called and, after the judge read the charge and

engaged in a colloquy with him on an unrelated question, pled not guilty. *Id.* at 1006. The record on appeal did not indicate whether the defendant was in the courtroom when the mass advisement was given, and the defendant was not individually questioned regarding his rights or whether he had heard the mass instruction. *Id.* In concluding that the defendant had not voluntarily and intelligently waived his right to a jury trial, the Maine court stated:

the mass instruction to an unidentified group present in the courtroom by itself is not enough to discharge the obligation of [Maine District Court Criminal Rules] Rule 5(b) and to justify an inference of a voluntary and intelligent waiver under Rule 40(a). The right to a jury belongs to the individual defendant; only he [or she], after being fully advised, can be considered to have waived it by doing nothing for 21 days. It is incumbent upon District Court judges in conducting arraignments to take affirmative steps reasonably designed to make *each* defendant *himself* [or herself] aware of his [or her] individual right to a jury trial and of the demand that he [or she] must make within 21 days if he [or she] is to avoid a binding inference of waiver. This record shows that no such affirmative steps vis-a-vis defendant Rowell were taken.

*Id.* at 1007–08 (footnote omitted).

A more recent Supreme Judicial Court of Maine decision advocates the following approach to the use of mass advisements in misdemeanor arraignments:

Because the court must often conduct a multitude of arraignments, logic and expediency dictate that an instruction to a group of defendants is a proper part of the process required by [Maine Rules of Criminal Procedure] Rule 5(d)(2). *State v. Rowell*, 468 A.2d 1005, 1007 n. 3 (Me.1983). We have said that "standing alone, however, the mass instruction is inadequate to establish that an individual defendant understood it, or even heard it." *Id.* The court must also take some "affirmative steps reasonably designed to make *each* defendant *himself* [or herself] aware of his [or her] individual right to a jury trial and

of the demand that he [or she] must make within 21 days" [pursuant to Maine law] to support a binding inference of waiver. *Rowell*, 468 A.2d at 1007–08 (emphasis in original). The court may achieve this, for example, by asking whether the defendant was present for the court's explanation and understands that he [or she] has the right to a jury trial, and that he [or she] will have waived that right if[, as required under Maine law,] he [or she] fails to file a completed jury trial request form with the clerk within twenty-one days.

*State v. Holmes*, 818 A.2d 1054, 1057 (Me. 2003) (second alteration in original) (original brackets omitted).

C. *Under the Totality–of–the–Circumstances Test, Myers Validly Waived His Right to a Jury Trial*

Myers initially argues that the individualized colloquy used by the family court to inform him of his right to a jury trial was insufficient and therefore, his waiver of the right was constitutionally invalid. Myers points out that the family court failed to ask him any questions from the *Duarte–Higareda* four-part colloquy that the Hawai'i Supreme Court "advised" trial judges "to aid in ensuring voluntary waivers[.]" *Friedman*, 93 Hawai'i at 69, 996 P.2d at 274.

██ However, it is well-settled under Hawai'i law that the *Duarte–Higareda* four-part colloquy is not mandatory for a waiver of the right to a jury trial to be valid. *See Sprattling*, 99 Hawai'i at 322, 55 P.3d at 286; *Friedman*, 93 Hawai'i at 69, 996 P.2d at 274; *State v. Valdez*, 98 Hawai'i 77, 79, 42 P.3d 654, 656 (App.2002). Rather, determination of whether a defendant intelligently, knowingly, and voluntarily waived his or her right to a jury trial must be based on the totality of the circumstances. *Friedman*, 93 Hawai'i at 69, 996 P.2d at 274.

██ In the present case, the mass advisement was part of the totality of the circumstances surrounding Myers' waiver. The family court's mass advisement comprehensively explained the constitutional right to a jury trial. The family court discussed the jury trial process at length, explaining that "the constitution of the State of Hawaii, the laws in this state, say that any person who is charged with a misdemeanor has by law a constitutional right to a trial, and that trial is with a jury."

Furthermore, the family court, in its mass advisement, addressed each element of the *Duarte–Higareda* colloquy. Namely, the family court informed the assembled defendants that "(1) twelve members of the community compose a jury, (2) the defendant may take part in jury selection, (3) a jury verdict must be unanimous, and (4) the court alone decides guilt or innocence if the defendant waives a jury trial." *United States v. Duarte–Higareda*, 113 F.3d 1000, 1002 (9th Cir.1997).

The family court addressed the first and second prongs of the *Duarte–Higareda* colloquy when it advised the assembled defendants: "[Y]ou, together with the prosecution, will be involved in selecting 12 people, and an alternate usually, to sit together as a group we call a jury." The family court fulfilled the third prong of the colloquy when it advised: "[I]t takes all 12 people to agree that there's enough evidence showing beyond a reasonable doubt that you've committed the offense. If all 12 people agree, they would return a verdict[,] a decision, guilty." Finally, the family court satisfied the fourth prong when it advised that "any defendant has the right to say I don't want the jury trial. I just want to have my case decided by a judge.... If you waive your right to jury trial, you don't want the 12 people, I'll tell you what date you have to come to court for trial in the Family Court[.]" Although under Hawai'i law each element need not necessarily be addressed to establish a voluntary and intelligent waiver of the right to jury trial, it is persuasive that a judge nevertheless does so. Thus, the family court's mass advisement sufficiently apprised Myers of his right to a jury trial.

██ In addition to administering the mass advisement, the family court questioned Myers individually. The family court directly asked Myers whether he was present during the mass advisement, whether he understood the explanation, and whether he was voluntarily waiving his right to a jury trial.

Myers answered these inquiries in the affirmative.

Myers argues that his waiver of his right to a jury trial was invalid because his defense counsel "made no representation to the trial court during the March 22, 2002 colloquy that [defense counsel] had discussed the right to jury trial with [him] prior to his initial appearance, nor did defense counsel represent that he believed [Myers] knew anything at all about his right to a jury trial." This argument is unpersuasive. Myers likens this case to *Valdez*, wherein this court considered the fact that "Valdez's counsel did not represent in open court that Valdez was aware of his right to a jury trial" in concluding that the district court failed to obtain a valid waiver of Valdez's right to a jury trial. *Valdez*, 98 Hawai'i at 79, 42 P.3d at 656.

*Valdez*, however, is distinguishable because the colloquy in that case did not include any advisement on the right to a jury trial. The court merely asked Valdez whether he wanted a trial by the court or a trial by jury, and Valdez chose a trial by the court. *Id.* at 78, 42 P.3d at 655. In contradistinction, the family court in this case engaged in a direct dialogue with Myers regarding the right to a jury trial and Myers indicated that he fully understood his right. Whether Myers' counsel represented to the court that Myers was aware of his right to a jury trial is irrelevant, since Myers himself indicated to the family court that he understood this right.

Myers' remaining argument is unavailing. Myers contends that the transcript of the court's mass advisement is not part of the record because it was made before Myers was called at the March 22, 2002 arraignment. This argument is moot because although the portion of the March 22, 2002 transcript containing the family court's mass advisement was initially not designated for inclusion in the record on appeal, the Hawai'i Supreme Court entered an order on June 3, 2003, granting the State's request to supplement the record.

## III. CONCLUSION

Based on our review of the totality of the circumstances of this case, we conclude that

Myers failed to establish that the waiver of his right to a jury trial was involuntary or improper. On the contrary, the family court's mass advisement, in conjunction with the family court's individualized colloquy of Myers, sufficiently apprised Myers of his constitutional right to a jury trial, and Myers knowingly, intelligently, and voluntarily waived his right to a jury trial.

Accordingly, we affirm the family court's August 22, 2002 Judgment.

Affirmed.