312 P.3d 897

STATE of Hawai'i, Respondent/Plaintiff–Appellee,

v.

Luis GOMEZ–LOBATO, Petitioner/Defendant–Appellant.

No. SCWC–11–0000338.

Supreme Court of Hawai'i.

Oct. 30, 2013.

Shawn A. Luiz, Honolulu, for petitioner.

Linda L. Walton, Kealakekua, for respondent.

RECKTENWALD, C.J., NAKAYAMA, McKENNA, and POLLACK, JJ., with ACOBA, J., Concurring Separately.

Opinion of the Court by
RECKTENWALD, C.J.

Luis Gomez–Lobato was charged with one count of Abuse of Family or Household Member in relation to an incident involving his former girlfriend. At a pre-trial hearing, Gomez–Lobato was represented by counsel and had the assistance of a Spanish-language interpreter. After a brief exchange, the Family Court of the Third Circuit Court recessed, and Gomez–Lobato and his interpreter reviewed the standardized jury trial waiver form. Gomez–Lobato provided his initials and signature on the form. The family court then reconvened and asked Gomez–Lobato several questions through the interpreter, including: (1) whether his initials and signature were on the form; (2) whether he understood what he was signing; (3) whether the form was explained to him in Spanish; and (4) whether he discussed the form with his attorney. Gomez–Lobato answered these questions affirmatively. The family court also asked Gomez–Lobato if he had any questions, to which Gomez–Lobato responded, "No." The family court concluded that Go-

mez–Lobato knowingly, voluntarily, and intelligently waived his right to a jury trial.

Following a bench trial, Gomez–Lobato was convicted of one count of Abuse of Family or Household Member. Gomez–Lobato appealed to the Intermediate Court of Appeals and argued that he did not validly waive his right to a jury trial. The ICA, however, affirmed his conviction and determined, inter alia, that under the totality of the circumstances, Gomez–Lobato knowingly, voluntarily, and intelligently waived his right to a trial by jury. *State v. Gomez–Lobato,* No. CAAP–11–0000338, 128 Hawai'i 312, 2012 WL 5272234, at \*\*1–2 (Haw.App. Oct. 25, 2012).

In his application for writ of certiorari, Gomez–Lobato raises the following questions: (1) whether he validly waived his right to a jury trial; and (2) whether the family court erred in sentencing Gomez–Lobato. Based on the record before us, we conclude that the family court erred in determining that Gomez–Lobato's jury waiver was made voluntarily, knowingly, and intelligently. We therefore vacate the ICA's and the family court's judgments and remand the case for a new trial. Given this disposition, we do not address Gomez–Lobato's argument regarding sentencing.

## I. Background

The following factual background is taken from the record on appeal.

### A. Family Court Proceedings

Gomez–Lobato was charged by complaint with "intentionally, knowingly or recklessly physically abus[ing Complainant], a family or household member, thereby committing the offense of Abuse of Family or Household Member," in violation of Hawai'i Revised Statutes (HRS) § 709–906(1).[1]

1. HRS § 709–906(1) (Supp.2010) provides:

   It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member or to refuse compliance with the lawful order of a police officer under subsection (4). The police, in investigating any complaint of abuse of a family or household member, upon request, may transport the abused person to a hospital or safe shelter.

At his Entry of Plea hearing, Gomez–Lobato, represented by a deputy public defender (DPD) and assisted by a Spanish interpreter, entered a not guilty plea.[2] The DPD then stated that the interpreter needed to go over a waiver of jury trial form with Gomez–Lobato. The court then recessed. After reconvening, the following conversation occurred, with the assistance of the interpreter:

[DPD]: [Gomez–Lobato] has reviewed the waiver of jury trial form.

. . . .

THE COURT: Good morning, Mr. Gomez Lobato. I have with me a waiver of jury trial form. Are these your initials, and is this your signature on this form?

[Gomez–Lobato]: Yes.

THE COURT: Prior to placing your initials and signature on this form, did you understand what you were doing and signing?

[Gomez–Lobato]: Yes.

THE COURT: And was that explained to you in Spanish?

[Gomez–Lobato]: Yes.

THE COURT: Did you discuss this with your attorney?

[Gomez–Lobato]: Yes.

THE COURT: Okay. Do you have any questions for me?

[Gomez–Lobato]: No.

THE COURT: Okay. The Court concludes that the defendant knowingly, voluntarily, intelligently waived his rights to a jury trial.

In the Waiver of Jury Trial form, Gomez–Lobato provided his initials next to the following statements, which were written in English:

2. I understand that I have the constitutional right to a jury trial. Furthermore, I

For the purposes of this section, "family or household member" means spouses or reciprocal beneficiaries, former spouses or reciprocal beneficiaries, persons who have a child in common, parents, children, persons related by consanguinity, and persons jointly residing or formerly residing in the same dwelling unit.

2. The Honorable Aley K. Auna, Jr., presided over the entry of plea hearing.

understand that a jury trial is a trial in the Circuit Court before a judge and a jury and that I can participate in the process of selecting a jury of twelve (12) citizens from the Third Circuit. This jury would hear the evidence in my case, and then decide if I am guilty or not guilty. Finally I understand that in order for me to be convicted by a jury, their vote must be unanimous.

3. I know that if I give up my right to a jury trial, the trial will be held in this Court before a judge who alone would decide if I am guilty or not guilty.

I request that my case be tried by a judge.

. . . . .

4b. I am satisfied with my attorney, and am entering this waiver with his [or] her advice.

5. I know that the punishment cannot be increased merely because I want a jury trial.

6. I am entering this waiver of my own free will after careful consideration. No promises or threats have been made to me to induce me to waive my right to a jury trial.

The State subsequently filed an Amended Complaint, which changed the date of the incident from "[o]n or about the 23rd day of September, 2010," to "[o]n or about the 24th through the 25th day of September, 2010[.]" No further waiver of jury trial form was executed in relation to the Amended Complaint.

The family court held a one-day bench trial,[3] at the conclusion of which the family court determined that the State proved beyond a reasonable doubt that the defendant committed the offense of Abuse of Family or Household Member. Accordingly, the family court entered its Judgment, Guilty Conviction and Sentence finding Gomez–Lobato guilty, and sentencing him to two years probation. Gomez–Lobato timely filed a notice of appeal.

## B. ICA Appeal

In his opening brief, Gomez–Lobato argued, inter alia, that the family court plainly erred in proceeding with a bench trial when Gomez–Lobato did not validly waive his right to a jury trial. Gomez–Lobato, citing *United States v. Duarte–Higareda,* 113 F.3d 1000 (9th Cir.1997), specifically argued that "[a]lthough a Spanish interpreter was present to assist [him], the [family] court never directly addressed [him] to verify his <u>understanding</u> of the jury waiver." (Emphasis in original). Gomez–Lobato contended that the "court just asked yes/no questions despite [his] language barrier" and "never ascertained if [he] truly understood the waiver of the right to trial by jury."

In its answering brief, the State argued that Gomez–Lobato did not argue below that the waiver of his right to a jury trial was invalid and, accordingly, this issue could only be reviewed for plain error. Nevertheless, the State argued that under the totality of the circumstances, Gomez–Lobato validly waived his right to a jury trial orally and in writing.

Gomez–Lobato filed a reply brief, in which he reasserted his argument that he did not provide a valid waiver of his right to a jury trial given the "language barrier," and argued that he did not provide a "knowing, intelligent and voluntary waiver" of his right to a jury trial on the charge set forth in the amended complaint because "the State did not even properly present the date of the alleged offense to [him] at the time of the alleged waiver[.]"

In a summary disposition order, the ICA determined that, under the totality of the circumstances, the family court did not err in concluding that Gomez–Lobato's waiver of a jury trial was knowing, intelligent, and voluntary. *Gomez–Lobato,* 2012 WL 5272234, at *1. The ICA also rejected Gomez–Lobato's other arguments on appeal. *Id.* at *2. Accordingly, the ICA affirmed the family court's March 15, 2011 Judgment, Guilty Conviction and Sentence. Gomez–Lobato timely filed an application for writ of certiorari. The State did not file a response.

## II. Standard of Review

The validity of a criminal defendant's waiver of his or her right to a jury

---

**3.** The Honorable Joseph P. Florendo, Jr., presiding.

trial presents a question of state and federal constitutional law.... We answer questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case. Thus, we review questions of constitutional law under the right/wrong standard.

*State v. Friedman*, 93 Hawai'i 63, 67, 996 P.2d 268, 272 (2000) (citations and quotation marks omitted).

### III. Discussion

**A. The record does not reflect that Gomez–Lobato knowingly, voluntarily, and intelligently waived his right to a jury trial**

█ In his application, Gomez–Lobato argues that the family court failed to adequately ensure that he understood that he was waiving his right to a jury trial. Gomez–Lobato specifically contends: "When the court addressed [him] there was a language barrier where the court solicited one word responses (yes/no) to questions, rather than delving into whether [he] clearly understood exactly what constitutional right [he] was giving up." As discussed below, based on the record before us, we cannot conclude that Gomez–Lobato knowingly, voluntarily, and intelligently waived his right to a jury trial.[4]

█ A criminal defendant is statutorily entitled to a trial by jury when the potential penalty for the charged crime is imprisonment for six months or more.[5] HRS § 806–60. A defendant is also entitled to waive his or her right to a jury trial. *See State v.*

*Ibuos*, 75 Haw. 118, 121, 857 P.2d 576, 578 (1993) (citing HRPP Rule 5(b)(3)). Generally, "[t]he waiver shall be either by written consent filed in court or by oral consent in open court entered on the record." HRPP Rule 23(a). Although the rule indicates the waiver may be given by written <u>or</u> oral consent, the rule does not relieve the court of its obligation to ensure, through an appropriate oral colloquy in court, that the waiver was knowingly, intelligently, and voluntarily given. *Cf. Tachibana v. State*, 79 Hawai'i 226, 236, 900 P.2d 1293 (1995) (requiring on-the-record waiver of defendant's right to testify). In other words, while the defendant may execute a written waiver form, the court should also engage in an oral colloquy with the defendant to establish that the waiver was knowing, intelligent, and voluntary. *See Ibuos*, 75 Haw. at 121, 857 P.2d at 578 ("The necessity for colloquy between the court and a defendant is especially apparent in light of the importance we place on the personal nature of a defendant's right to a jury trial."); *Friedman*, 93 Hawai'i at 68, 996 P.2d at 273. Lastly, "[w]here it appears from the record that a defendant has voluntarily waived a constitutional right to a jury trial, the defendant carries the burden of demonstrating by a preponderance of the evidence that his/her waiver was involuntary." *Friedman*, 93 Hawai'i at 69, 996 P.2d at 274 (citing *Ibuos*, 75 Haw. at 121, 857 P.2d at 578).

In *Friedman*, this court provided further guidance on determining the validity of a waiver of the constitutional right to a jury trial. The defendant, Bernd Friedman, was

4. The issue of whether Gomez–Lobato validly waived his right to a jury trial was not raised before the trial court. However, Gomez–Lobato asks this court to recognize such error as a "[p]lain error[ ] or defect[ ] affecting substantial rights[.]" *See* Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b). Under the circumstances of this case, we conclude that the district court's failure to obtain a valid waiver of Gomez–Lobato's fundamental right to a jury trial constituted plain error.

5. In certain cases, this court has recognized the right to a jury trial under the Hawai'i Constitution for particular offenses even though the maximum authorized terms of imprisonment do not exceed six months. *See, e.g., State v. Nakata*, 76 Hawai'i 360, 374, 878 P.2d 699, 713 (1994). In this regard, if the maximum term of imprison-

ment for a particular offense does not exceed thirty days, it is presumptively a petty offense to which the right to a jury trial does not attach. *State v. Lindsey*, 77 Hawai'i 162, 165, 883 P.2d 83, 86 (1994). This presumption can only be overcome in extraordinary cases, when consideration of the treatment of the offense at common law, the gravity of the offense, and the authorized penalty for the offense, "unequivocally demonstrates that society demands that persons charged with the offense at issue be afforded the right to a jury trial." *Id.* If the maximum authorized term of imprisonment for an offense is more than thirty days but not more than 180 days, no presumption applies, and the three factors set forth above must be considered to determine whether the right to a jury trial attaches. *Id.* at 165 n. 5, 883 P.2d at 86 n. 5.

charged with abuse of a family or household member. *Id.* at 65–66, 996 P.2d at 270–71. At his arraignment, the trial court engaged Friedman in the following colloquy:

> THE COURT: You're going to enter a plea of not guilty to the complaint in this case, you're also going to give up your right to a jury trial; is that correct?
>
> [Friedman]: Yes.
>
> THE COURT: And, you understand what a jury trial's about?
>
> [Friedman]: Yes.
>
> THE COURT: And can you explain in your own words what you understand that to mean?
>
> [Friedman]: A jury trial is where the outcome of the—the results of whether it's guilty or not is to be determined by 12 adults instead of a judge.
>
> The COURT: So by waiving that right means that your case will be decided by a judge, the judge alone is to decide your guilt or innocence.
>
> [Friedman]: Yes, Your Honor.
>
> THE COURT: Is your decision to waive your right to jury trial something you thought about and decided to do yourself voluntarily[?]
>
> [Friedman]: Yes.

*Id.* at 66, 996 P.2d at 271.

On appeal, Friedman, citing the Ninth Circuit's opinion in *Duarte–Higareda*,[6] argued that the trial court erred in failing to obtain a valid waiver of his right to a jury trial because he was not orally informed that a jury is comprised of twelve members, that he could take part in jury selection, or that a jury verdict must be unanimous. *Id.* at 69, 996 P.2d at 274.

This court expressly rejected Friedman's argument:

> Friedman appears to urge this court to adopt a "bright line rule" that a jury waiver can never be voluntary and knowing if a trial court fails to advise a defendant of any of the four aspects of a jury trial, as

expressed in the colloquy suggested in *Duarte–Higareda* . . . . [H]owever, *Duarte–Higareda* does not stand for the proposition that its suggested colloquy is required in every case. Although we are mindful of a criminal defendant's fundamental right to a jury trial and advise the trial court to engage in such a colloquy to aid in ensuring voluntary waivers, we decline to adopt Friedman's contention that the Duarte–Higareda colloquy is constitutionally required in every case.

Rather than adhering to a rigid pattern of factual determinations, we have long observed that the validity of a waiver concerning a fundamental right is reviewed under the totality of the facts and circumstances of the particular case.

*Id.* (citations omitted) (emphasis added).

Moreover, this court stated that the validity of the waiver of a right to a jury trial is reviewed "under the totality of the circumstances surrounding the case, taking into account the defendant's background, experience, and conduct." *Id.* at 70, 996 P.2d at 275 (citation omitted) (emphasis added). Citing, inter alia, to the trial court's colloquy and Friedman's statement regarding his understanding of the right to a jury trial, this court determined that Friedman's waiver was knowing and voluntary. *Id.* at 70, 996 P.2d at 275.

Like Friedman, Gomez–Lobato, citing the Ninth Circuit's decision in *Duarte–Higareda*, 113 F.3d at 1002, argues that he did not validly waive his right to a jury trial because the family court in this case did not "directly inform[ ]" him that: "(1) twelve members of the community compose a jury, (2) the defendant may take part in jury selection, (3) a jury verdict must be unanimous, and (4) the court alone decides guilt or innocence if the defendant waives a jury trial." Although this court has advised the trial courts to conduct *Duarte–Higareda*'s suggested colloquy, we have rejected the argument that such a colloquy is required in every case. *See Friedman,*

---

**6.** In *Duarte–Higareda*, the Ninth Circuit determined, inter alia, that the trial court was required to inform the defendant that: "(1) twelve members of the community compose a jury, (2) the defendant may take part in jury selection, (3) a jury verdict must be unanimous, and (4) the court alone decides guilt or innocence if the defendant waives a jury trial." 113 F.3d at 1002.

93 Hawai'i at 69, 996 P.2d at 274; *see also State v. Myers,* 108 Hawai'i 300, 307, 119 P.3d 608, 615 (App.2005) ("[I]t is well-settled under Hawai'i law that the *Duarte–Higareda* four-part colloquy is not mandatory for a waiver of the right to a jury trial to be valid. Rather, a determination of whether a defendant intelligently, knowingly, and voluntarily waived his or her right to a jury trial must be based on the totality of the circumstances.") (citations omitted); *State v. Mitchell,* 94 Hawai'i 388, 395, 15 P.3d 314, 321 (App.2000).

Moreover, Gomez–Lobato signed a waiver form that listed all four factors. Therefore, the issue before this court is whether the signed waiver form, together with the questions asked of Gomez–Lobato in the oral colloquy, were enough to show that the defendant knowingly, voluntarily, and intelligently waived his right to a jury trial. *Duarte–Higareda* provides guidance on this question. There, the defendant, Sergio Duarte–Higareda, was indicted for conspiracy to possess methamphetamine and possession of methamphetamine with intent to distribute. 113 F.3d at 1001. Duarte–Higareda, who was not fluent in English, signed a jury trial waiver form that was printed entirely in English. *Id.* at 1002. The record was silent as to whether the waiver form had been translated for Duarte–Higareda. *Id.* At his arraignment, Duarte–Higareda's counsel informed the federal district court that Duarte–Higareda wanted to waive his right to a jury trial. *Id.* Although an interpreter was present to assist Duarte–Higareda throughout the court proceedings, the district court never directly addressed Duarte–Higareda to verify his understanding of the waiver he had signed. *Id.* The district court held a bench trial and Duarte–Higareda was subsequently convicted of the charged offenses. *Id.*

On appeal, the Ninth Circuit determined that the "language barrier" between Duarte–Higareda and the court was a " 'salient fact' that gave notice to the district court that Duarte's waiver 'might be less than knowing and intelligent[.]' " *Id.* at 1003 (citation omitted). To ensure that the waiver was voluntary, the Ninth Circuit stated:

[W]e have previously set forth <u>guidelines</u> for a district court to follow in determining whether a defendant's jury waiver is voluntary, knowing, and intelligent. The district court <u>should</u> inform the defendant that (1) twelve members of the community compose a jury, (2) the defendant may take part in jury selection, (3) a jury verdict must be unanimous, and (4) the court alone decides guilt or innocence if the defendant waives a jury trial. Furthermore, the district court should question the defendant to ascertain whether the defendant understands the benefits and burdens of a jury trial and freely chooses to waive a jury.

*Id.* at 1002 (emphasis added) (citations omitted).

The Ninth Circuit, however, declined to impose an "absolute requirement of such a colloquy in every case." *Id.* at 1003. Nevertheless, the Ninth Circuit vacated Duarte–Higareda's conviction on the ground that he possessed the "special disadvantage or disability" of not speaking English, which affected his ability to understand the waiver of his right to a jury trial. *Id.* at 1003.

The instant case is distinguishable from *Duarte–Higareda* in several respects, most notably because the record here indicates that the waiver form was translated for Gomez–Lobato and the court communicated directly with Gomez–Lobato through the interpreter. Nevertheless, the language barrier between Gomez–Lobato and the family court was a " 'salient fact' that ... gave notice to the [family] court that [Gomez–Lobato's] waiver 'might be less than knowing and intelligent.' " *See id.* Accordingly, this "salient fact" should have prompted the family court to ask additional questions to verify that Gomez–Lobato understood the right he was waiving.

■ Although the family court conducted a colloquy with Gomez–Lobato regarding the waiver form, the family court's questions were not sufficient to establish that Gomez–Lobato knowingly, voluntarily, and intelligently waived his right to a jury trial. Specifically, the family court asked Gomez–Lobato whether the form contained his initials and signature, whether he understood "what he

was doing and signing," whether the form was explained to him in Spanish, and whether he discussed "this with [his] attorney[.]" [7] Respectfully, in light of Gomez–Lobato's language barrier, his affirmative answers to each of these questions did not establish that he understood he was waiving his right to a jury trial.[8]

This is particularly true where, as here, the record contains little information with respect to the defendant's background, experience and conduct. *Friedman,* 93 Hawai'i at 70, 996 P.2d at 275 ("[W]e review the validity of a defendant's waiver of his/her right to a jury trial under the totality of the circumstances surrounding the case, taking into account the defendant's background, experience, and conduct."). Indeed, there is nothing in the record to indicate Gomez–Lobato's educational or employment background, or experience with the criminal justice system, that could establish that he understood his right to a jury trial.

■■■■■ This does not mean that the court is required to conduct the full *Duarte–Higareda,* four-factor colloquy in every case.[9] *See id.* at 69, 996 P.2d at 274; *Duarte–Higareda,* 113 F.3d at 1002; HRPP Rule 23(a). Again, whether a colloquy is sufficient

to establish that a defendant validly waived his or her right to a jury trial is reviewed "under the totality of the circumstances surrounding the case[.]" *Friedman,* 93 Hawai'i at 70, 996 P.2d at 275. Trial courts are best situated to determine what questions need to be asked of individual defendants.[10] However, where a language barrier indicates that a defendant's written waiver executed outside the presence of the judge "might be less than knowing and intelligent," *see Duarte–Higareda,* 113 F.3d at 1003, the court should take additional steps to ensure the defendant understands the right that he or she is waiving.

■■■■■ For example, in the instant case, the court did not expressly confirm with Gomez–Lobato that he understood that he had a right to trial by jury and that he was waiving that right. The court could have asked those questions, or, as Gomez–Lobato suggests, the court could have asked Gomez–Lobato what the document he signed meant to him, which would have required more than a yes or no answer and would have allowed the court to assess whether Gomez–Lobato truly understood the right he was waiving. *Cf. Friedman,* 93 Hawai'i at 70, 996 P.2d at 275. Because the questions asked by the family

7. It is not clear what the district court was referring to when it asked Gomez–Lobato whether he discussed "this" with his attorney. The district court could have used "this" to refer to the waiver form, the general concept of a waiver of a right to a jury trial, or the fact that he placed his initials and signature on the form.

8. In circumstances where a defendant needs the assistance of an interpreter, <u>defense counsel</u> is obligated to explain any waiver of the defendant's constitutional rights through an interpreter; such explanations must not be given by the interpreter independent of counsel. *See* Hawai'i Rules for Certification of Spoken and Sign Language Interpreters, Appendix B, Part III, Rule 9 (1995) ("A court interpreter shall not give legal advice to parties and witnesses."). In this case, it is not clear from the record whether defense counsel explained the waiver form and the defendant's constitutional rights through the interpreter or whether the interpreter independently explained the defendant's rights.

9. Accordingly, we respectfully do not adopt the concurring opinion's suggestion that this court should mandate an oral on-the-record *Duarte–Higareda* four-part colloquy in every case where

a defendant waives his or her right to a jury trial. *See* Concurring opinion at 475–76, 312 P.3d at 912–13. Nevertheless, as this court has previously stated, "we are mindful of a criminal defendant's fundamental right to a jury trial and <u>advise the trial court to engage in such a colloquy</u> to aid in ensuring voluntary waivers[.]" *Friedman,* 93 Hawai'i at 69, 996 P.2d at 274 (emphasis added); *see State v. Han,* 130 Hawai'i 83, 91, 306 P.3d 128, 135 (2013) (defining "colloquy" as "[any] formal discussion, such as an <u>oral exchange</u> between a judge, the prosecutor, the defense counsel, and a criminal defendant in which the judge ascertains the defendant's understanding of the proceedings and of the defendant's rights" (citation omitted) (emphasis added)).

10. This flexibility, however, does not relieve a trial court of its duty to inform a defendant of the right to a jury trial, *see* HRPP Rule 5(b)(1), nor does it diminish the "serious and weighty" responsibility placed on trial courts in approving a waiver of jury trial. *See United States v. Saadya,* 750 F.2d 1419, 1421 (9th Cir.1985) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)); *see also Han,* 130 Hawai'i at 92, 306 P.3d at 137 (quoting *Duarte–Higareda,* 113 F.3d at 1003); HRPP Rule 23(a).

court were insufficient to establish that Gomez–Lobato in fact understood he was waiving his right to a jury trial, we conclude that the family court erred in determining that Gomez–Lobato's jury waiver was made voluntarily, knowingly, and intelligently.[11]

## IV. Conclusion

Based on the foregoing, we vacate the ICA's judgment filed on November 23, 2012, and the family court's judgment filed on March 15, 2011, and remand the case for a new trial.

### Concurring Opinion by ACOBA, J.

I would hold that the waiver of the right to jury trial in this case was invalid, because under the circumstances, the Family Court of the Third Circuit (the court) did not engage Petitioner/Defendant–Appellant Luis Gomez–Lobato (Gomez–Lobato) in an on-the-record colloquy that would ensure that he fully understood the right that he was waiving.[1]

I would also hold that in the future, in order to ensure that a waiver of the constitutional right to a trial by jury, Haw. Const. art. I, § 14, is knowingly, intelligently and voluntarily made, courts must conduct an on-the-record colloquy that includes informing the defendant that (1) twelve members of the community compose a jury, (2) defendants may take part in jury selection, (3) jury verdicts must be unanimous, and (4) the court alone decides guilt or innocence if defendants waive a jury trial. *See State v. Friedman,* 93 Hawai'i 63, 68, 996 P.2d 268, 273 (2000) (citations omitted).

Such an admonition is especially imperative where there is a "salient fact," *see United States v. Duarte–Higareda,* 113 F.3d 1000 (9th Cir.1997), such as the language barrier in this case, that should alert the court of the need to ensure that the defendant fully understands his or her waiver of jury trial. Indeed, "inherent in the nature of justice is the notion that those involved in the litigation should understand and be understood." *In re Doe,* 99 Hawai'i 522, 534, 57 P.3d 447, 459 (2002).

### I.

### A.

On October 26, 2010, Gomez–Lobato was charged by Complaint with Abuse of Family or Household Member, Hawai'i Revised Stat-

---

11. Gomez–Lobato argues that this court should draw upon the analyses articulated in *State v. Valdez,* 98 Hawai'i 77, 79, 42 P.3d 654, 656 (App.2002), and *State v. Kaupe,* No. 22725 (Haw. May 10, 2001) (mem.), to support his contention that he did not validly waive his right to a jury trial. However, this court need not address these cases because *Valdez* is distinguishable insomuch as the State, in that case, conceded that the defendant's waiver was invalid, and *Kaupe* is an unpublished disposition issued prior to July 1, 2008, *see* HRAP Rules 35(c)(1) and (2).

Gomez–Lobato also argues that the waiver was invalid because it was executed prior to the amended complaint. The general rule is that a valid waiver remains effective after a complaint is amended, unless the amended complaint added additional counts or substituted a more serious offense. Wayne R. LaFave, et. al., *Criminal Procedure* 1077 (5th ed. 2009) ("Once a valid jury waiver has occurred, a defendant has no constitutional right to withdraw or revoke the waiver, and it may be considered in effect even if there is some adjustment in the charges, provided there has not occurred an addition of counts or a substitution of a more serious charge, and even if there is a change of judge."); *Le Louis v. Superior Court,* 209 Cal.App.3d 669, 257 Cal.Rptr. 458,

467–68 (1989) ("Generally speaking, if the prosecutor amends a complaint, indictment, or information to charge a new offense or to add a prior conviction or penalty enhancement, this renders a prior jury trial waiver ineffective.") (emphasis added); *State v. Williams,* 205 Conn. 456, 534 A.2d 230, 235 (1987); *People v. Spain,* 91 Ill. App.3d 900, 47 Ill.Dec. 451, 415 N.E.2d 456, 460 (1980).

In this case, at the time of Gomez–Lobato's waiver of the right to a jury trial, he was aware that he was charged with one count of Abuse of Family or Household Member that occurred "[o]n or about" September 23, 2010. The amended complaint merely changed the date of the same Abuse of Family or Household Member charge. The amended complaint neither charged a new offense, nor substituted the initial charge with a more serious offense. *See Le Louis,* 257 Cal.Rptr. at 467–68. Moreover, Gomez–Lobato fails to cite any authority that supports his contention that the family court was required to obtain another waiver in these circumstances. Thus, Gomez–Lobato's argument that the amendment to the complaint required execution of a new waiver, under the circumstances of this case, is without merit.

1. I concur with the majority in the result.

utes (HRS) § 709–906(1) (Supp.2010)[2]. On December 22, 2010, Gomez–Lobato appeared before the court,[3] assisted by a Spanish language interpreter. Gomez–Lobato was provided with a waiver of jury trial form, and the court called a recess in order for the interpreter to review the form with Gomez–Lobato outside of the courtroom. The form stated as follows [4]:

1. I waive my right to a jury trial in the following charge(s):

AFHM [Abuse of Family or Household Member]

2. LGL [Gomez–Lobato] I understand that I have the constitutional right to a jury trial. Furthermore, I understand that a jury trial is a trial in the Circuit Court before a judge and a jury and that I can participate in the process of selecting a jury of twelve (12) citizens from the Third Circuit. This jury would hear the evidence in my case, and then decide if I am guilty or not guilty. Finally I understand that in order for me to be convicted by a jury, their vote must be unanimous.

3. LGL I know that if I give up my right to a jury trial, the trial will be held in this Court before a judge who alone would decide if I am guilty or not guilty. I request that my case be tried by a judge.

4a. ~~I have intelligently and of my own free will decided to represent myself and do now waive and give up my right to an attorney for the purposes of this hearing.~~

OR

4b. LGL I am satisfied with my attorney, and am entering this waiver with his/her advice.

5. LGL I know that the punishment cannot be increased merely because I want a jury trial.

6. LGL I am entering this waiver of my own free will after careful consideration. No promises or threats have been made to me to induce me to waive my right to a jury trial.

Dated: Kealakekua Naalehu Kapaau, Hawai i, 12/22/10

Luis Gomez Lobato
Defendant

CERTIFICATE OF COUNSEL

As counsel for defendant and as an officer of the Court, I certify that I have read and explained fully the foregoing, that I believe that the defendant understands the document in its entirety, that the statements contained therein are in conformity with my understanding of the defendant's position, that I believe that the defendant's waiver is made voluntarily and with intelligent understanding of the nature of the charge and possible consequences, and that the defendant signed this form in my presence.

Dated: Kealakekua Naalehu Kapaau, Hawai'i. 12/22/10

[signature illegible]
Attorney for Defendant

I acknowledge that ~~Judge Joseph P. Florendo, Jr.~~ (or Judge A.K. Akuna, Jr.) questioned me personally in open court to make sure that I knew what I was doing and understood this form before I signed it.

Luis Gomez Lobato
Defendant

(To be signed in open court.)

Upon returning to the courtroom after the recess, the following exchange took place: [Gomez–Lobato's attorney]: [Gomez–Lobato] has reviewed the waiver of jury trial form.

2. HRS § 709–906(1) provides:

It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member or to refuse compliance with the lawful order of a police officer under subsection (4). The police, in investigating any complaint of abuse of a family or household member, upon request, may transport the abused person to a hospital or safe shelter.

For the purposes of this section, "family or household member" means spouses or recipro-

cal beneficiaries, former spouses or reciprocal beneficiaries, persons who have a child in common, parents, children, persons related by consanguinity, and persons jointly residing or formerly residing in the same dwelling unit.

3. The Honorable Aley K. Auna, Jr. presided.

4. Emphases indicate a handwritten portion of the form, strike-through indicates that a line was put through the text on the form.

. . . .

THE COURT: Good morning, Mr. Gomez[-]Lobato. I have with me a waiver of jury trial form. Are these your initials, and is this your signature on this form? [Gomez–Lobato]: Yes.

THE COURT: Prior to placing your initials and signature on this form, did you understand what you were doing and signing?

[Gomez–Lobato]: Yes.

THE COURT: And was that explained to you in Spanish?

[Gomez–Lobato]: Yes.

THE COURT: Did you discuss this with your attorney?

[Gomez–Lobato]: Yes.

THE COURT: Okay. Do you have any questions for me?

[Gomez–Lobato]: No.

THE COURT: Okay. The [c]ourt concludes that the defendant knowingly, voluntarily, intelligently waived his rights to a jury trial.

(Emphasis added.) The waiver of jury trial form signed by Gomez–Lobato was in the English language.

On March 1, 2011, an Amended Complaint was filed, changing the dates on which the offense was allegedly committed.

The bench trial took place on March 9, 2011.[5] The proceedings were conducted with the assistance of a Spanish language interpreter. At the conclusion of trial, the court found Gomez–Lobato guilty and sentenced him to thirty (30) days imprisonment and 30 days imprisonment suspended for two years on the condition that he comply with the terms and conditions of probation.[6] The Judgment of Conviction and Sentence was filed on March 15, 2011.

B.

Gomez–Lobato appealed to the Intermediate Court of Appeals (ICA), alleging that the court plainly erred because it (1) did not obtain a valid waiver of Gomez–Lobato's right to trial by jury, and (2) sentenced Gomez–Lobato based on uncharged conduct, namely, attempted murder. Respondent/Plaintiff–Appellee State of Hawai'i (the State) responded that (1) the colloquy and facts of the case indicate a valid waiver, and (2) the court did not sentence Gomez–Lobato for an uncharged crime and did not rely on any fact outside the record of the trial.

In his Reply Brief, Gomez–Lobato maintained that he did not knowingly, intelligently and voluntarily waive his right to trial by jury because there was a language barrier, and the court elicited only one word "yes" or "no" responses, rather than determining whether Gomez–Lobato clearly understood the constitutional right he was giving up.[7] Gomez–Lobato also explained that, in his view, the judge's words concerning attempted murder indicated that the judge had in mind a felony crime when sentencing Gomez–Lobato.

The ICA issued a Summary Disposition Order (SDO) on October 25, 2012.[8] *State v.*

. . . .

---

5. The Honorable Joseph P. Florendo, Jr. presided.

6. The court stated, *inter alia,* as follows:

THE COURT: I have found you guilty of a criminal offense, and you as of yet failed to take responsibility for your actions. Did you wish to make any statement before the [c]ourt sentences you?

. . . .

THE COURT: All right. The [c]ourt would find you guilty and order that you be placed on probation for a period of two years. I will order that you be imprisoned for a period of 30 days.

I will suspend 30 days of jail for two years on condition you comply with all of the terms and conditions of probation[.]

7. On appeal to the ICA and before this court, Gomez–Lobato also argued that because he signed the waiver of jury trial form before the State filed an amended complaint to alter the dates of the alleged offense, his waiver was invalid. On this issue, I concur with the majority's statement that "[t]he general rule is that a valid waiver remains effective after a complaint is amended, unless the amended complaint added additional counts or substituted a more serious offense." Majority's opinion at 473 n. 11, 312 P.3d at 905 n. 11. Thus, Gomez–Lobato's jury trial waiver form was ostensibly valid despite the subsequent alteration of dates in the amended complaint.

*Gomez–Lobato*, No. CAAP–11–0000338, 128 Hawai'i 312, 288 P.3d 130, 2012 WL 5272234 at *1 (App. Oct. 25, 2012) (SDO). The ICA held that under the totality of the circumstances, " 'taking into account the defendant's background, experience, and conduct[,]' " *id.* (quoting *Friedman*, 93 Hawai'i at 70, 996 P.2d at 275), "Gomez–Lobato failed to demonstrate by a preponderance of the evidence that his waiver was involuntary[,]" *id.* at *2. In support of this conclusion, the ICA noted that (1) Gomez–Lobato provided no authority supporting the proposition that the court had to do more than ask him yes or no questions about his waiver, (2) Gomez–Lobato had the assistance of an interpreter and the court recessed so that the interpreter could review the waiver form with Gomez–Lobato, (3) after recess Gomez–Lobato's attorney stated that he had reviewed the form, and (4) the court asked Gomez–Lobato a number of questions about his understanding, to which he responded "Yes." *Id.* at *1. The ICA entered its Judgment on November 23, 2012.[9]

**II.**

On certiorari to this court, Gomez–Lobato argues, with respect to his first point, that he did not validly waive his right to trial by jury, and that the ICA erred in affirming the court's sentence. The State did not file a Response to the Application.

**III.**

**A.**

The right to trial by jury is a fundamental right protected by the sixth amendment to the United States Constitution[10], article I, section 14 of the Hawai'i Constitution[11], and by statute. *See* Hawai'i Revised Statutes (HRS) § 806–60 (1993) ("Any defendant charged with a serious crime shall have the right to trial by a jury of twelve members. 'Serious crime' means any crime for which the defendant may be imprisoned for six months or more.")[12]; *see also State v. Ibuos*,

---

**8.** The ICA's SDO was filed by the Honorable Daniel R. Foley, the Honorable Alexa D.M. Fujise, and the Honorable Lawrence M. Reifurth.

**9.** Inasmuch as this case must be vacated, Gomez–Lobato's point of error with respect to his sentence need not be addressed.

    However, two brief points are noted with respect to the ICA's decision on this issue. First, respectfully, the ICA mistakenly noted that Gomez–Lobato was sentenced to one thirty-day term of incarceration, suspended for two years. *See Gomez–Lobato*, 2012 WL 5272234, at *1. Rather, Gomez–Lobato was sentenced to one 30-day term of imprisonment, and to an additional 30-day term of imprisonment, which was suspended provided that Gomez–Lobato comply with the terms and conditions of his probation.

    Second, at sentencing, the court apparently decided that Gomez–Lobato had failed to take responsibility for his actions before asking him if he would like to make a statement. *Cf. State v. Chow*, 77 Hawai'i 241, 246–47, 883 P.2d 663, 668–69 (1994) (recognizing that a defendant's "right to be heard in criminal proceedings prior to sentencing is constitutionally protected"). Although the court eventually heard from Gomez–Lobato at sentencing and so his constitutional right to be heard was satisfied, the court had apparently decided, before giving him a chance to speak, that he had not taken responsibility for his actions.

**10.** The Sixth Amendment to the United States Constitution provides, in relevant part that, "[i]n

all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed[.]" U.S. Const. amend. VI.

**11.** The Hawai'i Constitution similarly provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the district wherein the crime shall have been committed[.]" Haw. Const. art. I, § 14.

**12.** Although HRS § 806–60 provides that a "serious crime" for which there is a right to trial by jury means "any crime for which the defendant may be imprisoned for six months or more[,]" this court has taken into account multiple factors when determining if an offense is petty or serious, for purposes of the right to trial by jury. *See State v. Ford*, 84 Hawai'i 65, 69–70, 929 P.2d 78, 82–83 (1996). Three factors are analyzed to determine whether an offense is constitutionally petty or serious: "(1) treatment of the offense at common law; (2) the gravity of the offense; and (3) the authorized penalty." *Id.* at 70, 929 P.2d at 82; *State v. Sullivan*, 97 Hawai'i 259, 264, 36 P.3d 803, 809 (2001); *see also State v. Lindsey*, 77 Hawai'i 162, 164, 883 P.2d 83, 85 (1994) (noting the presumption that this jurisdiction will not recognize the right to a jury trial where the maximum term of imprisonment is less than thirty days). Consequently, an offense involving a term of imprisonment that is less than six

75 Haw. 118, 120, 857 P.2d 576, 577 ("In Hawai'i, a statutory right to a jury trial arises whenever a criminal defendant can be imprisoned for six months or more upon conviction of the offense.") (citing HRS § 806–60).

Hawai'i Rules of Penal Procedure (HRPP) Rule 5(b)(1) requires that "the court shall in appropriate cases inform the defendant that he has a right to a jury trial in the circuit court or may elect to be tried without a jury in the district court." *See Ibuos*, 75 Haw. at 120, 857 P.2d at 577. "[A]ppropriate cases" are those cases where the defendant has a constitutional right to a jury trial. *See Friedman*, 93 Hawai'i at 68, 996 P.2d at 273 (2000) (citing *Ibuos*, 75 Haw. at 120, 857 P.2d at 577).

"A defendant may, orally or in writing, voluntarily waive his or her right to trial by jury[,]" but for a valid waiver, "the trial court has a duty to inform the accused of that constitutional right." *Id.* (citing *Ibuos*, 75 Haw. at 120, 857 P.2d at 577) (citation omitted)). The colloquy preceding any waiver of the right to jury trial serves several functions: " '(1) it more effectively insures voluntary, knowing and intelligent waivers; (2) it promotes judicial economy by avoiding challenges to the validity of waivers on appeal; and (3) it emphasizes to the defendant the seriousness of the decision [to waive a jury trial].' " *Id.* (quoting *United States v. Cochran*, 770 F.2d 850, 851–52 (9th Cir.1985)) (alterations omitted) (other citations omitted)).

HRS § 806–61 (1993) provides that "[t]he defendant in a criminal case may, with the consent of the court, waive the right to a trial by jury either by written consent filed in court or by oral consent in open court entered on the minutes." (Emphasis added.) This is reiterated in Hawai'i Rule of Penal Procedure (HRPP) Rule 23(a), which pro-

vides that "[c]ases required to be tried by jury shall be so tried unless the defendant waives a jury trial with the approval of the court. The waiver shall be either by written consent filed in court or by oral consent in open court entered on the record." (Emphasis added.) While the foregoing rule and statute seem to indicate a written form would suffice to effect a waiver, a colloquy between the court and the defendant in open court and on-the-record would appear necessary in waiving a constitutional right to a jury trial. This court has required an oral waiver in the context of entrance of a guilty plea, *see State v. Vaitogi*, 59 Haw. 592, 585 P.2d 1259 (1978), and the waiver of the right to counsel, *see Wong v. Among*, 52 Haw. 420, 477 P.2d 630 (1970). *Ibuos*, 75 Haw. at 121 n. 1, 857 P.2d at 576 n. 1. Similarly, the constitutional nature of the right to trial by jury requires that a waiver of that right be made on-the-record. *See* Haw. Const. art. I, § 14. The Hawai'i Constitution controls over any inconsistent language permitting waiver by written consent alone.

While a defendant may waive his or her right to a jury trial, the waiver must be made knowingly, intelligently, and voluntarily. *Id.*; *see also State v. Han*, 130 Hawai'i 83, 89, 306 P.3d 128, 134 (2013) (noting that the waiver of a fundamental right must be made knowingly, intelligently, and voluntarily). "The failure to obtain a valid waiver of this fundamental right constitutes reversible error." *Friedman*, 93 Hawai'i at 68, 996 P.2d at 274 (citing *Ibuos*, 75 Haw. at 120, 857 P.2d at 577).

**B.**

As discussed *supra*, "the validity of a criminal defendant's waiver of his or her right to a jury trial presents a question of state and federal constitutional law."[13] *Friedman*, 93

months can still constitute constitutionally a "serious" crime for which there is a right to trial by jury.

**13.** It is noted that Gomez–Lobato did not raise his points of error at trial. However, it is well established that this court may *sua sponte* notice "[p]lain errors or defects affecting substantial rights ...[,]" HRPP Rule 52(b), and that "this court will apply the plain error standard of re-

view to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *State v. Miller*, 122 Hawai'i 92, 100, 223 P.3d 157, 165 (2010) (citations omitted). Because of the fundamental constitutional nature of the right to a jury trial, this court has held that the failure to waive a jury trial constitutes plain error that can be

Hawai'i at 67, 996 P.2d at 272. This court reviews questions of constitutional law, including the waiver of a jury trial, under the right/wrong standard. *Id.* Gomez–Lobato's waiver of jury trial was deficient for two reasons.

First, as a general matter, the court's colloquy consisted of only yes and no questions, and under the circumstances, was not sufficient to gauge his understanding of the constitutional right. Second, his language barrier was a "salient fact" requiring that the court conduct an on-the-record colloquy to ensure Gomez–Lobato's understanding of the right. In connection with this ground, because Gomez–Lobato went over the form with the interpreter outside the presence of the court, the court should have inquired of Gomez–Lobato as to his understanding of the matters on the form, so that the court could be assured that such matters were correctly translated to him.

### IV.

As noted, "[f]or a valid waiver of the right to a jury trial, the trial court has a duty to inform the accused of that constitutional right." *Friedman,* 93 Hawai'i at 68, 996 P.2d at 273. This is accomplished through a colloquy conducted in open court. *Id.* " 'Colloquy' is defined as '[a]ny formal discussion, such as an <u>oral exchange</u> between a judge, the prosecutor, the defense counsel, and a criminal defendant in which the <u>judge ascertains the defendant's understanding</u> of the proceedings and of the defendant's rights.' " *Han,* 130 Hawai'i at 90, 306 P.3d at 135 (emphases in original) (quoting Black's Law Dictionary 300 (9th ed. 2009)). Under the circumstances of this case, it does not appear that the court properly engaged Gomez–Lobato in such a colloquy, and therefore did not adequately ascertain his understanding of the proceedings.

In the exchange between the court and Gomez–Lobato, the court made a number of omissions. Namely, it <u>did not ask Gomez–Lobato any questions about the content of the jury trial waiver form or the rights articulated on the form</u> itself, but instead only

recognized for the first time on appeal. See

asked whether he generally understood what he was "doing and signing" prior to initialing the form. That question by itself does not indicate that Gomez–Lobato understood what a jury trial means or that he was waiving the right to a jury trial. As discussed *infra,* inquiring directly of the defendant as to his understanding of the material parts of the form may help the court to confirm that the waiver form was properly translated for the defendant. Finally, the court's last question, "[d]o you have any questions for me?" also would not provide any indication as to whether the defendant understood his right to a jury trial, because the court had not articulated the content of the right to the defendant in the first instance.

Although in *State v. Sprattling,* 99 Hawai'i 312, 55 P.3d 276 (2002), discussed further, *infra,* this court upheld the defendant's waiver of the right to jury trial where the defendant answered the court's questioning with, in effect, yes or no responses, that case is distinguishable from the instant case. *See* 99 Hawai'i at 315, 55 P.3d at 276. In *Sprattling,* the trial court articulated to the defendant the content of the right to a jury trial, including that he would have an opportunity to select twelve people from the community to make a decision on guilt or innocence. *Id.* As a result, when the defendant answered "yes" or "I understand that, sir[,]" *id.,* the defendant was answering questions about what the right to jury trial actually meant. In this case, on the other hand, Gomez–Lobato only answered questions about the act of signing the waiver form, and generally whether he understood the form. The questions did not address any specific portions of the form, or the substance of the right at issue.

Under the circumstances of a case, simply asking yes or no questions, even in connection with a signed jury trial waiver form, may not sufficiently confirm that a criminal defendant understands the right that he or she is waiving. Asking the defendant to articulate back to the court his or her understanding of the right at issue may establish an "oral exchange" that would provide assurance of "the defendant's understanding of the pro-

*Friedman,* 93 Hawai'i at 68, 996 P.2d at 272.

ceedings and of the defendant's rights." *Han,* 130 Hawai'i at 90, 306 P.3d at 128 (citation omitted).

In *Friedman,* this court noted that the colloquy suggested that the defendant was aware of his right to trial by jury, because "[the defendant] did not simply acknowledge his right to a jury trial with a simple 'yes'; rather, [the defendant] articulated to the trial court that '[a] jury trial is where the outcome of … whether it's guilty or not is to be determined by 12 adults instead of a judge.' " 93 Hawai'i at 70, 996 P.2d at 268. The discussion between the court and Gomez–Lobato, therefore, did not establish that he understood the right that he was waiving by signing the form, and that he knowingly, intelligently, and voluntarily gave up that right. His waiver of the right to trial by jury would therefore be invalid on these grounds alone.

## V.

### A.

Additionally, Gomez–Lobato's lack of English proficiency was a "salient fact" the court was required to consider in conducting its colloquy. In *Duarte–Higareda,* a federal case discussed in *Friedman* at length, *see Friedman,* 93 Hawai'i at 69, 996 P.2d at 274, the defendant had used a Spanish language interpreter throughout the proceedings, but signed a written jury waiver form that was written entirely in English. 113 F.3d at 1003. *Duarte–Higareda* held that "[the defendant's] language barrier, like [ ] mental illness, is a salient fact that was known to the district court and put the court on notice that [the defendant's] waiver might be less than knowing and intelligent[.]" *Id.* (emphasis added). The Ninth Circuit thus held that the language barrier triggered an additional reason for the district court to engage in a colloquy with the defendant "to carry out its 'serious and weighty responsibility' of ensuring that a defendant's jury waiver is voluntary, knowing, and intelligent." *Id.* (quoting

*United States v. Christensen,* 18 F.3d 822, 826 (9th Cir.1994)).[14]

Recently, this court, in *Han,* employed the rationale in *Friedman* in holding that the trial court's colloquy with the defendant regarding his right to testify or not to testify was insufficient, because of the "salient fact" of the defendant's language barrier. *See Han,* 130 Hawai'i at 92, 306 P.3d at 137. Previously, the ICA had interpreted *Friedman* to require that the court conduct the specific, four-part on-the-record colloquy articulated in *Friedman* whenever there is a "salient fact" drawing the court's attention to the fact that the defendant may not understand the right to jury trial he or she is waiving. *See State v. Barros,* 105 Hawai'i 160, 169, 95 P.3d 14, 24 (App.2004) ("[The defendant] has failed to direct us to any 'salient fact' bearing upon his ability to understand his jury waiver … such as the defendant's lack of English in *Duarte–Higareda* … that would have created the need for an extensive colloquy by the trial court[.]") (emphasis omitted) (internal quotation marks and citations omitted), *cert. denied,* 105 Hawai'i 196, 95 P.3d 627 (2004); *State v. Mitchell,* 94 Hawai'i 388, 395, 15 P.3d 314, 321 (App.2000) ("[The defendant] has not pointed to any 'salient fact' indicating an inability to understand or to make a constitutionally effective waiver of his jury trial right, that would have created the need for an extensive colloquy by the court.") (citation omitted).

There is no question that Gomez–Lobato's language barrier in the instant case was a "salient fact" within the meaning of *Duarte–Higareda,* as articulated by this court in *Friedman.* Gomez–Lobato was assisted by a Spanish language interpreter throughout trial and, as noted, in reviewing the jury trial waver form. Thus, having established that there was a "salient fact" that could inhibit the defendant's understanding, pursuant to this court's holding in *Friedman,* 93 Hawai'i at 69, 996 P.2d at 274, the court was required to relate the specific, four-part inquiry dis-

---

**14.** Obviously if it is evident on-the-record that a non-native speaker is articulate in the English language, no barrier to understanding the pro-

ceeding would exist, and thus a "salient fact" consideration would not apply. *See* note 15, *infra.*

cussed *supra*, in its colloquy with Gomez–Lobato.

### B.

Additionally, the use of a Spanish language interpreter to assist Gomez–Lobato out of the presence of the court in reading the English language jury trial waiver form should have alerted the court of the need to conduct a more complete on-the-record colloquy with Gomez–Lobato regarding his signing of the jury trial waiver form. Pursuant to HRPP Rule 28(b), the court may appoint an interpreter to assist a criminal defendant.[15] This is in accordance with procedural due process, which requires that "an individual whose rights are at stake understand the nature of the proceedings he or she faces." *In re Doe*, 99 Hawai'i at 533, 57 P.3d at 458. The court in this case should have asked the defendant to articulate back, through the interpreter, the contents of the right that he was waiving.

By having Gomez–Lobato describe for the court in his own words, with the assistance of the interpreter, the right to jury trial, the court would have had a basis for concluding that the translation by the interpreter enabled Gomez–Lobato to understand the jury trial waiver form, and accordingly, the nature of the constitutional right to a trial by jury. Haw. Const. art. I, § 14. The colloquy that the court did conduct with Gomez–Lobato provided no such assurances, because the court did not question Gomez–Lobato on the substance of the right he was waiving.

Based on the insufficiency of the colloquy at trial, the case must be remanded for a new trial. As will be discussed *infra* in the next section, however, the circumstances of this case highlight the need for a uniform inquiry to be given where the defendant is waiving his or her right to a jury trial.

### VI.

This court has provided guidance to the courts as to the type of colloquy that should be conducted in order to ensure that a defendant's waiver of the right to a jury trial is valid. As discussed *supra*, during the colloquy, a court should inform the defendant that " '(1) twelve members of the community compose a jury, (2) the defendant may take part in jury selection, (3) a jury verdict must be unanimous, and (4) the court alone decides guilt or innocence if the defendant waives a jury trial.' " *Friedman*, 93 Hawai'i at 69, 996 P.2d at 274 (quoting *Duarte–Higareda*, 113 F.3d at 1002) (citation omitted).

This court has not heretofore adopted the requirement in a published opinion that the above four-part advisement be included in the colloquy given in every case.[16] *State v. Kaupe*, No. 22725, slip op. at 18, 96 Hawai'i 71, 26 P.3d 29 (Haw. May 10, 2001) (mem.). However, as discussed *infra*, the ICA in a published opinion did hold that the four-part advisory derived from *Friedman* was apropos in a jury trial waiver proceeding. *State v. Valdez*, 98 Hawai'i 77, 79, 42 P.3d 654, 656 (App.2002) (stating that "we believe the four-part colloquy referred to in *Friedman* is apropos"). In determining whether such an admonition should be required, a brief histor-

---

**15.** However, an interpreter may not always be required where an individual's first language is not English. *In re Doe* held that "[t]o assess whether an interpreter is necessary," courts should consider the following guidance:

> "[a]n interpreter is needed if upon examination by the court, (1) a party or witness is unable to speak English so as to be understood directly by counsel, court, and jury, or (2) if a party is unable to hear, understand, speak and/or use English sufficiently to comprehend the proceedings and to assist counsel in the conduct of the case."

*In re Doe*, 99 Hawai'i at 535, 57 P.3d at 460 (emphases omitted) (quoting Supreme Court of Hawai'i, *Policies for Interpreted Proceedings in the Courts of the State of Hawai'i* Rule 1(a)

(adopted June 22, 1995), *available at* Supreme Court of Hawai'i, *Hawaii Rules for Certification of Spoken and Sign Language Interpreters*, Appendix B (adopted July 11, 2007)). *See also, Hawaii Rules for Certification of Spoken and Sign Language Interpreters* Rule 1.3 ("A person who is Limited English Proficient (LEP), deaf, or hard-of-hearing shall, throughout a legal proceeding, have the right to the assistance of an interpreter appointed by the court as provided by court rule.").

**16.** To provide a historical perspective, it must be noted that this court did discuss the implementation of the four-part colloquy requirement in an unpublished memorandum opinion, *Kaupe*, No. 22725, slip op. at 18.

ical discussion of the evolution of this court's law in this area is instructive.

In 1972, in *State v. Olivera*, 53 Haw. 551, 497 P.2d 1360 (1972), this court upheld as valid a defense counsel's waiver of jury trial on behalf of his client, where the waiver was given in the presence of the defendant. 53 Haw. at 551–52, 497 P.2d at 1361. It was concluded that under the circumstances, the defendant was "well informed" of his right to trial by jury. *Id.* at 553, 497 P.2d at 1362. Later, this court held in *State v. Swain*, 61 Haw. 173, 599 P.2d 282 (1979), that "a defendant's waiver of his constitutional right must be knowing and voluntary[.]" 61 Haw. at 175, 599 P.2d at 284. There, the State argued that defense counsel had implicitly waived the defendant's right to jury trial by proceeding to trial. *Id.* *Swain* concluded that where the attorney stated that the defense was "ready to proceed" to trial, the defendant had not effectively waived his right to jury trial because "[a]lthough an attorney may waive the right to trial by jury for his client, express or implied concurrence of the defendant must be obvious for the waiver to be effective." *Id.* at 176, 599 P.2d at 287.

*State v. Young*, 73 Haw. 217, 830 P.2d 512 (1992), overruled *Olivera* and *Swain*, by requiring that "it is the defendant who must make the waiver, upon being well informed of his right to trial by jury." 73 Haw. at 221, 830 P.2d at 514 (emphasis added). *Young* explained that "[i]t is a better practice for the trial court to exact a knowing and voluntary waiver from the defendant either in writing or orally in open court at the time of the arraignment and plea." *Id.* (citing *United States v. Cochran*, 770 F.2d 850, 852 (9th Cir.1985)). Thus, *Young* concluded, "[i]n order to provide clearer instructions to the lower courts and to ensure the safeguard of the right to jury trial, we now overrule *Olivera*." *Id.* at 221, 830 P.2d at 515.

In *Ibuos*, the prosecution argued that *Young* was limited to situations where defense counsel's waiver was ambiguous, but did not require that defense counsel could never waive the right to a jury trial on behalf of his or her client. 75 Haw. at 122, 857 P.2d at 578. *Ibuos* rejected that argument, and

stated that "we now clarify that the personal waiver requirement of *Young* applies to situations beyond the ambiguous waiver in *Young*." *Id.*

Following *Ibuos*, in *Friedman*, this court discussed the attributes of a valid waiver of the right to jury trial. *Friedman*, 93 Hawai'i at 68–71, 996 P.2d at 273–76. There, the trial court had engaged in the following colloquy with the defendant:

> THE COURT: All right, Mr. Friedman. Do you understand what [Defense counsel] just told me?
>
> [FRIEDMAN]: Yes, I do.
>
> THE COURT: You're going to enter a plea of not guilty to the complaint in this case, you're also going to give up your right to a jury trial; is that correct?
>
> [FRIEDMAN]: Yes.
>
> THE COURT: And, you understand what a jury trial's about? [FRIEDMAN]: Yes.
>
> THE COURT: And can you explain in your own words what you understand that to mean?
>
> [FRIEDMAN]: A jury trial is where the outcome of the—the results of whether it's guilty or not is to be determined by 12 adults instead of a judge.
>
> THE COURT: So by waiving that right means that your case will be decided by a judge, the judge alone is to decide your guilt or innocence.
>
> [FRIEDMAN]: Yes, Your Honor.
>
> THE COURT: Is your decision to waive your right to jury trial something you thought about and decided to do yourself voluntarily.
>
> [FRIEDMAN]: Yes.
>
> THE COURT: All right. Since a waiver to jury trial has been entered, this matter will be set for trial here in the Family Court. . . .

*Id.* at 66, 996 P.2d at 271 (emphases added). On appeal, Friedman had argued that the trial court had a duty to inform him of all four of the aspects of a jury trial described in *Duarte–Higareda*. *Id.* at 69, 996 P.2d at 274 (citing *Duarte–Higareda*, 113 F.3d at 1002) (citation omitted). At that time, *Friedman* rejected a bright line rule requiring all four

advisements to be given, and held instead, that under the circumstances, Friedman had not demonstrated that his waiver was involuntary, and failed to point "to any 'salient fact' bearing upon his ability to understand his jury waiver that would have created the need for an extensive colloquy by the trial court[.]" *Id.* at 70, 996 P.2d at 275.

In *Sprattling*, the defendant challenged the sufficiency of his jury trial waiver, and this court reviewed the circumstances under which the waiver was made, concluding that it was valid. 99 Hawai'i at 315, 55 P.3d at 279. It noted, *inter alia*, that the defendant was assisted by capable counsel, and that the district court had informed him that he could select twelve members of the community as jurors, and that if he chose to waive his right, the judge would determine his guilt or innocence. *Id.* at 322, 55 P.3d at 286. Thus, the court had articulated two of the components of a jury trial to the defendant, but this court did not require that the court inform the defendant of all four components. *Id.*

In *Valdez*, discussed *infra*, the ICA reiterated the advice to trial courts from *Friedman*. *Valdez*, 98 Hawai'i at 79, 42 P.3d at 656. As noted, the ICA stated that it was "apropos" that trial courts inform defendants of the four-part advisement set forth in that case to ensure valid jury trial waivers and to curtail the number of appeals premised on defective waivers. *Id.*[17] In *Valdez*, the ICA stated as follows:

> [T]o provide guidance to the trial court in performing its duty to inform the defendant of his/her constitutional right to a jury trial, we believe the four-part colloquy referred to in Friedman is apropos. The Hawai'i Supreme Court in *Friedman* advised the trial court "to engage in such a colloquy to aid in ensuring voluntary waivers." [93 Hawai'i at 69, 996 P.2d at 274.] We reiterate that advice. To "ensure a voluntary waiver" of the defendant's right to a jury trial, the trial court should, in open court, directly inform the defendant that "(1) twelve members of the communi-

ty compose a jury, (2) the defendant may take part in jury selection, (3) a jury verdict must be unanimous, and (4) the court alone decides guilt or innocence if the defendant waives a jury trial." *Id.* (internal quotation marks omitted). <u>By the trial court's use of this procedure, the three purposes of an open-court colloquy ... are fully satisfied; the trial court's ascertainment of the defendant's waiver is facilitated; and any appeal premised on the defendant's defective waiver claims is curtailed.</u>

*Valdez*, 98 Hawai'i at 79, 42 P.3d at 656 (emphases added) (second alteration added, other alterations in original).

### VII.

In practice, courts have articulated the right to a jury trial in a number of different ways to defendants, leading to a number of appeals, some with merit and some without, on whether the defendant's waiver was in fact made knowingly, intelligently, or voluntarily. Where such important rights are at stake, and where the remedy of a violation of such a right is a remand for a new trial, the advantage of requiring courts to include a specific inquiry on-the-record is readily apparent.

Indeed, the reasons underlying the requirement that a court conduct a colloquy at all support the mandate of certain specific questions. First, the *Friedman* inquiry would be more effective than the current, generalized requirement of ensuring knowing, intelligent, and voluntary waivers, because it would specifically advise each criminal defendant of the nature of a jury trial, and therefore, what rights the defendant would be foregoing.

Second, the inquiry would limit the number of appeals, because appellate courts would no longer be reviewing the content of the colloquy on a case-by-case basis, but would instead consider whether the court's colloquy included the four-part advisement,

---

**17.** The majority distinguishes *Valdez* on the basis that the State had conceded that the defendant's waiver was invalid. Majority's opinion at 473 n. 11, 312 P.3d at 905 n. 11. However, respectfully, the State's concession appears to have had little

or no impact on the ICA's analysis and conclusion in that case with respect to the implementation of the four-part colloquy. *Valdez*, 98 Hawai'i at 79, 42 P.3d at 656.

curtailing the potential defective waiver claims that could be appealed. Courts would be assured that cases would not be vacated on appeal for failure to properly set forth the nature of a jury trial and the consequences of waiving such a trial. Third, a more in-depth description of the jury trial process would serve to emphasize to the defendant the seriousness of what he or she would be deciding to waive and to lend confidence to the parties and the courts that the waiver was properly made.

The four-part advisement described in *Friedman* is already contained in the Hawai'i Criminal Bench Book.[18] Thus, no undue hardship would result from mandating that the above model inquiry be given as part of the colloquy in each case where the defendant has expressed an intent to waive his or her right to a jury trial.

## VIII.

The majority notes that where a defendant is assisted by an interpreter, defense counsel is obligated to explain to the defendant the waiver of a constitutional right, and that, in this case, it is not clear whether defense counsel did in fact explain the waiver to Gomez–Lobato. Majority's opinion at 472 n. 8, 312 P.3d at 904 n. 8. It is evident that counsel has a duty to his or her client based on the client's right to effective counsel to explain the contents of a jury trial waiver form. But, such a duty does not excuse the court from ensuring that the defendant understood the right being waived, before accepting a waiver of a jury trial.

It is well-established that the waiver of a jury trial is a personal one. *See Young*, 73 Haw. at 221, 830 P.2d at 514. Insofar as the majority indicates that a defendant could waive his right based on the explanation by the defense counsel, it poses a new limitation on the court's obligation to ensure that the waiver is validly made. Further, the uncer-

tainty as to whether defense counsel explained the waiver form through the interpreter, or whether the interpreter simply went over the text of the waiver form with the defendant is further reason for requiring a uniform inquiry to assure validity of waivers.

The majority also concludes there was ambiguity in the court's colloquy with respect to whether Gomez–Lobato discussed "this" with his attorney and whether by "this" the court meant the waiver form, the waiver of the right to jury trial, or the initialing and signing of the form. Majority's opinion at 472 n. 7, 312 P.3d at 904 n. 7. Again, such ambiguity illustrates precisely why this court should adopt for the trial courts a specific inquiry to include in the court's colloquy, to ensure that not only Gomez–Lobato, but all defendants, understand this right, so that on appeal, a reviewing court can determine whether or not a particular exchange resulted in a valid waiver. In this case, as discussed *supra*, the exchange did not result in a valid waiver.

## IX.

Hawai'i case law requires that specific admonitions be given in other cases where the rights at stake are those of a fundamental constitutional nature. For example, in the context of the criminal defendant's right to testify, the trial court must conduct two separate advisements to a defendant explaining the right, one at the start of trial—the "*Lewis* advisement*", see State v. Lewis*, 94 Hawai'i 292, 296–97, 12 P.3d 1233, 1237–38 (2000), and one at the close of the defendant's case— the "*Tachibana* colloquy", *see Tachibana v. State*, 79 Hawai'i 226, 237 n. 9, 900 P.2d 1293, 1304 n. 9 (1995). *Han*, 130 Hawai'i at 90, 306 P.3d at 135. The second of these advisements requires the court to engage in a specific colloquy with the defendant where he or she has indicated the preference not to testify, advising him or her

18. The Hawaii Criminal Bench Book provides as follows:

> Also, court should directly inform defendant in open court that:
> Twelve members of the community compose a jury;

> Defendant may take part in jury selection;
> A jury verdict must be unanimous; and
> In a bench trial, the court alone decides guilt or innocence if defendant waives trial by jury.
> *Hawaii Criminal Bench Book*, Jury Trial, Right to Trial by Jury, Section D—"Court's Duty to Inform Defendant of Right." (emphasis added).

"[ (1) ] that he or she has a right to testify, [ (2) ] that if he or she wants to testify that no one can prevent him or her from doing so, and [ (3) ] that if he or she testifies the prosecution will be allowed to cross examine him or her. In connection with the privilege against self-incrimination, the defendant should also be advised that [ (4) ] he or she has a right not to testify and [ (5) ] that if he or she does not testify then the jury can be instructed about that right."

*Id.* (quoting *Tachibana*, 79 Hawai'i at 236 n. 7, 900 P.2d at 1303 n. 7). Significantly, one of the rationales that this court has recognized for requiring this specific colloquy is " 'the minimization of post-conviction disputes over the actual waiver of the right to testify[.]' " *Han*, 130 Hawai'i at 88, 306 P.3d at 133 (emphasis added) (quoting *Lewis*, 94 Hawai'i at 295, 12 P.3d at 1236).

*Lewis* expanded upon *Tachibana*, requiring that the court give an additional advisement regarding the defendant's right to testify or not to testify. 94 Hawai'i at 297, 12 P.3d at 1238. On this point, *Lewis* stated that, "we now mandate that ... the trial courts 'prior to the start of trial, shall (1) inform the defendant of his or her personal right to testify or not to testify and (2) alert the defendant that, if he or she has not testified by the end of the trial, the court will briefly question him or her to ensure that the decision not to testify is the defendant's own decision.' " *Id.* (quoting *Tachibana*, 79 Hawai'i at 237 n. 9, 900 P.2d at 1304 n. 9). This additional advisement, like the *Tachibana* colloquy, was instituted in order to "limit[ ] any post-conviction claim that a defendant testified in ignorance of his or her right not to testify." *Id.*

Additionally, in *State v. Murray*, 116 Hawai'i 3, 169 P.3d 955 (2007), this court held that the trial court must conduct a colloquy regarding waiver of proof of an element of the offense. 116 Hawai'i at 12, 169 P.3d at 964. There, this court discussed the requirement that a defendant could stipulate to the element of a prior felony conviction only if the court engaged in an on-the-record colloquy with the defendant "acknowledging the prior felony conviction and acceding to the stipulation." *Id.* at 13, 169 P.3d at 965. Thus, in the context of a stipulation as to an element of the offense, this court also required that the trial court conduct a colloquy to obtain an informed on-the-record acknowledgment of the defendant's waiver of the prosecutorial obligation to prove each element of a crime beyond a reasonable doubt. *Id.* Notably, *Murray* grounded its specific mandate in the reasoning in *Ibuos* and *Tachibana*, stating that "[t]hose cases indicate that a colloquy between the trial court and defendant is the best way to ensure that a defendant's constitutional right ... is protected, and that the defendant has knowingly and voluntarily waived such a right." *Id.* at 12, 169 P.3d at 964.[19]

### X.

As constituted in Hawai'i, requiring as part of the colloquy, a specific inquiry of criminal defendants on their right to a jury trial would not, in effect, be foreign to our procedure at all. Instead, it would be a salutary measure to effectuate the guidance that has existed in this jurisdiction since *Friedman* was decided in 2000. *See Friedman*, 93 Hawai'i at 69, 996 P.2d at 274.

If the court fails to advise the defendant in accordance with this four-part inquiry, then the defendant's waiver of the right to trial by

---

**19.** Moreover, a number of other jurisdictions require a specific colloquy in the context of a waiver of the right to a jury trial. In Pennsylvania, for example, "[p]rior to accepting a defendant's waiver of his right to a jury trial, the trial court must conduct a colloquy wherein it apprises the defendant of the three essential elements of a jury trial: that the jury would be selected from members of the community; that the verdict must be unanimous; and that the defendant would be allowed to participate in the selection of the jury." *Comm. v. Hughes*, 536 Pa. 355, 639 A.2d 763, 772 (1994) (citing *Comm. v. Williams*, 454 Pa. 368, 312 A.2d 597 (1973)). Similarly, "as a matter of judicial administration," the Wisconsin supreme court has imposed the requirement that "a circuit court in a criminal case must advise the defendant that the court cannot accept a jury verdict that is not agreed to by each member of the jury." *State v. Resio*, 148 Wis.2d 687, 436 N.W.2d 603, 607 (1989); *see State v. Anderson*, 249 Wis.2d 586, 638 N.W.2d 301, 306 (2002) (affirming this requirement).

jury would be deemed invalid unless the prosecution can show that the error was harmless beyond a reasonable doubt with respect to the defendant's waiver of his or her right to a jury trial. That is, the State must then show that there is no reasonable possibility that the error might have contributed to the defendant's waiver of his or her right. *See State v. Schnabel,* 127 Hawai'i 432, 450, 279 P.3d 1237, 1255 (2012). However, if the court's colloquy includes this advisement, the defendant's waiver will be presumptively valid, and the defendant must show, by a preponderance of the evidence, that his or her waiver was involuntary. *See Friedman,* 93 Hawai'i at 69, 996 P.2d at 274 (citing *Ibuos,* 75 Haw. at 121, 857 P.2d at 578).

It is not difficult to foresee that courts will continue to be faced in the future with similar questions as to the validity of jury trial waivers. The frequency with which this issue has arisen indicates that a specific inquiry should be included in the colloquy with respect to the right to trial by jury. Just as this court, in *Young,* overruled *Olivera's* holding that defense counsel could waive the right to jury trial on behalf of their clients, similarly *Friedman's* holding as to the nonobligatory nature of the *Duarte–Higareda* four-part inquiry should be overruled, in favor of the assurance that in every case, the defendant's right to a jury trial has been waived knowingly, intelligently, and voluntarily.[20]

## XI.

Despite the majority's holding that such a four-part inquiry is not required as part of the colloquy, individual courts are free to institute such procedures to protect the jury trial right and to avoid recurring appeals from disparate waiver colloquies. This may be easily accomplished, as set forth in *Valdez,* 98 Hawai'i at 79, 42 P.3d at 656, and the Hawaii Criminal Bench Book.

## XII.

In accordance with the above, I would therefore hold that Gomez–Lobato's waiver of the right to jury trial was insufficient in this case, and thus the March 15, 2011 judgment of the court must be vacated, and the case remanded for a new trial. Furthermore, in my view, a trial court must engage the defendant in the on-the-record colloquy that includes a four-part inquiry described herein, subject to harmless error review on appeal.

---

**20.** The jury waiver advisement could be grounded in this court's supervisory powers, and accordingly, would be prospective in effect. *See State v. Cabagbag,* 127 Hawai'i 302, 316, 277 P.3d 1027, 1042 (2012) (applying this court's holding regarding eyewitness instructions on a prospective basis); *see also Tachibana,* 79 Hawai'i at 238, 900 P.2d at 1305 (holding that "the colloquy requirement established ... shall only apply prospectively to cases in which the trial is not completed until after the date of [the] decision."); *Lewis,* 94 Hawai'i at 297, 12 P.3d at 1238 ("we now mandate that, in trials beginning after the date of this opinion," trial courts give specific information to defendants prior to the start of trial).