**Electronically Filed**
**Supreme Court**
**SCWC-16-0000402**
**31-JAN-2020**
**10:00 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

_____

STATE OF HAWAIʻI, Respondent/Plaintiff-Appellee,

vs.

VICENTE L. DOMUT, also known as VICENTE DOMUT,
Petitioner/Defendant-Appellant.

_____

SCWC-16-0000402

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000402; CASE NOS. 2DTA-15-01298 and 2DTC-14-004621)

JANUARY 31, 2020

McKENNA, POLLACK, AND WILSON, JJ., WITH
RECKTENWALD, C.J., CONCURRING IN PART AND DISSENTING IN PART,
WITH WHOM NAKAYAMA, J., JOINS

OPINION OF THE COURT BY McKENNA, J.

## I.  Introduction

On April 20, 2016, Vicente Domut ("Domut") was convicted at a bench trial in the District Court of the Second Circuit Wailuku Division ("district court") of Driving Without a License in violation of Hawaiʻi Revised Statutes ("HRS") § 286-102(a)

(Supp. 2015) and of No Motor Vehicle Insurance in violation of HRS § 431:10C-104(a) (2005) and HRS § 431:10C-117(a)(2),(3),(5) (Supp. 2006). Despite requesting a continuance for sentencing, Domut was immediately sentenced to (1) a jail term of 180 days for Driving Without a License as a repeat offender; (2) a fine of $1,500 and $37 in fees for No Motor Vehicle Insurance; and (3) suspension of any driver's license for one year. Domut appealed the district court's April 20, 2016 judgment to the Intermediate Court of Appeals ("ICA"), which in a summary disposition order, State v. Domut, CAAP-16-0000402, at 1 (App. July 30, 2018) (SDO), affirmed the district court's judgment.

Domut raises two questions on certiorari. First, he contends the ICA erred because the State of Hawai'i ("State") failed to prove beyond a reasonable doubt that Domut was not in constructive possession of a license from Mexico or Canada, which would have exempted him from licensing requirements pursuant to HRS § 286-105 (2007). We addressed this issue in State v. Castillon, 144 Hawai'i 406, 443 P.3d 98 (2019). We held that a defendant bears the initial burden to produce evidence to support a Hawai'i driver's license exemption based on possession of a valid license from Canada or Mexico. Domut did not produce any evidence of the applicability of the exemption to him.

Therefore, his first question on certiorari is without merit and we do not further address this issue.

In his second question on certiorari, Domut contends the ICA erred in concluding that he failed to meet his burden of production to raise evidence of a "good faith lack of knowledge" defense under HRS § 431:10C-117(a)(4)(C),[1] and that the burden had shifted to the State to disprove the defense beyond a reasonable doubt, citing to State v. Bolosan, 78 Hawai'i 86, 890 P.2d 673 (1995).  In that case, we held that "if a driver borrows an uninsured vehicle, the State must prove beyond a reasonable doubt that the driver actually knew that the vehicle was uninsured at the time [the driver] was operating it." Bolosan, 78 Hawai'i at 90-91, 890 P.2d at 677-78.

Domut contends that evidence adduced by the State that he was transporting two passengers in the vehicle, that he was not on that date and never was the registered owner of the vehicle,

---

[1]     HRS § 431:10C-117(a)(4)(C) provides:

>        (4)  Any person cited under this section shall have an
>        opportunity to present a good faith defense, including but
>        not limited to lack of knowledge or proof of
>        insurance.  The general penalty provision of this section
>        shall not apply to:
>
>        . . . .
>
>        (C)     Any operator of a borrowed motor vehicle if the
>                operator holds a reasonable belief that the subject
>                vehicle is insured . . . .

and that the vehicle's registration was current provided evidence of the "good faith lack of knowledge defense," shifting the burden to the State to disprove the defense beyond a reasonable doubt.

As indicated by the ICA, we held in State v. Lee, 90 Hawai'i 130, 976 P.2d 444 (1999), that the defendant bears the burden of production that they[2] had borrowed a vehicle owned by another. Lee, 90 Hawai'i at 140, 976 P.2d at 454.  Although evidence of facts establishing a defense may also be supplied by the prosecution, State v. Locquiao, 100 Hawai'i 195, 206, 58 P.3d 1242, 1253 (2002), Domut did not meet his burden of producing evidence that he had borrowed a vehicle owned by another. Therefore, we reject his argument.

But in his second question on certiorari, Domut also alleges the ICA erred by requiring him to present evidence of a "borrower/lender relationship" with the registered owner of the vehicle to assert the "good faith lack of knowledge" defense. In this regard, we agree that the ICA erred.  HRS § 431:10C-117(a)(4)(C) allows the "good faith lack of knowledge" defense when an operator reasonably believes a "borrowed motor vehicle" is insured.  An operator could have such a belief without

---

[2]    "They, them, and their" are used as singular pronouns when (1) the gender identity of the person referred to is unknown or immaterial; or (2) those are the pronouns of a specific person.

4

"borrowing" the motor vehicle from the registered owner. This error does not, however, require vacating Domut's No Motor Vehicle Insurance conviction, as there was no evidence of "borrowing" that would have shifted the burden to the State to disprove the defense.

We notice plain error affecting substantial rights, however, that requires vacating Domut's convictions for Driving Without a License and No Motor Vehicle Insurance. Domut was entitled to a jury trial on the Driving Without a License charge. During the jury trial waiver colloquy, the district court advised Domut that he had a right to jury trial on only one of the charges, and it did not inform him that he was entitled to a jury trial on the Driving Without a License charge. For this reason alone, there was no valid waiver of his right to jury trial on this charge. The district court's advisement during the jury trial colloquy was also erroneous and confusing for other reasons. Thus, the record does not reflect a knowing and intelligent waiver of Domut's right to a jury trial. State v. Gomez-Lobato, 130 Hawai'i 465, 469, 312 P.3d 897, 901 (2013).

Accordingly, the district court's judgment as well as the ICA's judgment on appeal are vacated and the case is remanded to

the district court for further proceedings consistent with this opinion.

## II. Background

## A. Factual background and district court proceedings

On November 17, 2014, Domut was driving a motor vehicle carrying two passengers on Haleakalā Highway. Domut was stopped by Maui County Police Officer Lawrence Becraft ("Officer Becraft") for speeding and not using a turn signal. When asked by Officer Becraft, Domut did not produce a driver's license, proof of motor vehicle insurance, or proof of self-insurance. Officer Becraft issued Domut two citations, including the citation 2DTC-14-004621, one for the subject Driving Without a License and No Motor Vehicle Insurance charges.[3] The State charged Domut for those offenses in an amended complaint:

> COUNT ONE:
>
> That on or about the 17th day of November, 2014, in the Division of Wailuku, County of Maui, State of Hawaii, VICENTE DOMUT having been convicted of Driving Without a License (H.R.S. Section 286-102), two or more times within a five-year period of the instant offense, did intentionally, knowingly or recklessly operate a motor vehicle of a category listed in Section 286-102 of the Hawaii Revised Statutes without first being appropriately examined and duly licensed as a qualified driver of said category of motor vehicles, thereby committing the offense of Driving Without a License in violation of Sections 286-102 and 286-136(b) of the Hawaii Revised Statutes.

---

[3] Citation 2DTC-14-004621 was issued for the two subject traffic crimes, while citation 2DTI-14-018886 was issued for two non-criminal traffic infractions: exceeding the speed limit by 22 miles per hour in violation of HRS § 291C-102(a)(1) (2007) and driving without a license on the person in violation of HRS § 286-116(a) (2007).

COUNT TWO:

That on or about the 17th day of November, 2014, in the Division of Wailuku, County of Maui, State of Hawaii, VICENTE DOMUT having previously committed the offense of no Motor Vehicle Insurance (H.R.S. Section 431:10C-104) two or more times within a five-year period of the instant offense, did intentionally, knowingly, or recklessly operate or use a motor vehicle bearing license plate number LAH091, upon any public street, road, or highway of this State without said motor vehicle being insured under a motor vehicle insurance policy, thereby committing the offense of No Motor Vehicle Insurance in violation of Sections 431:10C-104(a) and 431:10C-117(a)(2), (3), (5) of the Hawaii Revised Statutes.

On November 5, 2015, Domut appeared before the district court.[4] The following colloquy took place:

COUNSEL: [Deputy Public Defender] for . . . with Mr. Domut in receipt of complaint ending 1298, failure to appear. The other ending 4621, Driving Without a License, no motor vehicle insurance. Waiving reading both matters. Um . . . I note that he does have a jury trial right. One second . . . . He would waive jury trial right.

COURT: Okay, your name, sir.

DEFENDANT: Vicente Domut.

COURT: Okay, Mr. Domut. Um, on some, on one of the charges you have a right to a trial by a jury. A trial by a jury is one in which a jury is picked by you, your attorney, and the prosecutor. Twelve people from the community are picked to be the jurors. The jury . . . ah . . . all twelve members must find you guilty unanimously in order to convict you of a crime.

DEFENDANT: Yes, sir.

COURT: If all twelve do not find you guilty, then you're not guilty of that particular crime. Um . . . if you waive, that is, give up your right to a trial by a jury, and it will be a district court judge and a judge by him – or herself will have uh will preside over a trial if we have a trial. Uh . . . it's my understanding from your attorney that you want to waive your right to a trial by a jury. Is that what you want to do?

---

[4] The Honorable Douglas J. Sameshima presided.

DEFENDANT:  Yes, sir.

COURT:  You understand your right to a trial by jury?

DEFENDANT:  Yes, sir.

COURT:  And you still want to waive it.

DEFENDANT:  Yes.

COURT:  This is your decision?

DEFENDANT:  Yes, sir.

COURT:  And you're entering your waiver uh of your own free will?

DEFENDANT:  Yes, sir.

COURT:  Based on my questions, I find that the defendant has knowingly, voluntarily and intelligently waived his right to a trial by a jury.  I'll accept the not guilty plea entered by your attorney.

The district court then entered an order indicating Domut had waived his right to a jury trial and had pled not guilty.

On April 20, 2016, the district court[5] conducted a bench trial.

The State first presented Officer Becraft as a witness.  In summary, Officer Becraft testified as follows.  On November 17, 2014, he stopped Domut on the Haleakalā Highway, a public roadway, for speeding and not using a turn signal.  Domut was in the driver's seat and two passengers were in the vehicle.  Officer Becraft asked Domut for his driver's license and vehicle

---

[5]     The Honorable Blaine Kobayashi presided over the trial and sentencing. The trial was for two district court cases consolidated by agreement for purposes of trial:  (1) 2DTC-14-004621, prosecution for driving without a license and driving without motor vehicle insurance; and (2) 2DTA-15-01298, prosecution for failure to appear in court in violation of HRS § 803-6(e) (2014).  Domut's failure to appear conviction was not appealed to the ICA and is not a part of this certiorari proceeding.

registration. Domut gave him a Hawaiʻi State I.D. and "nothing else was current except the registration may have been current." Domut stated "he didn't have a license on him." When Officer Becraft asked Domut for his insurance card, Domut did not produce the card, did not provide any proof that he was self-insured, and did not explain why he did not have insurance. Officer Becraft then issued Domut two citations, including a citation for Driving Without a License and No Motor Vehicle Insurance.

Juvylyn Garalde ("Garalde"), a customer service representative from the Department of Motor Vehicles ("DMV"), testified next for the State. Garalde interpreted a database printout of the title and registration form for the vehicle Domut was driving on November 17, 2014, which indicated that Jose Vasquez-Polito obtained title to that vehicle on October 28, 2013 from Felicity Rogust and that there had been no subsequent transfers of title to the vehicle.[6]

Domut did not present any evidence.

---

[6] The State also moved into the record (1) "a notice of entry of judgment from case ending in 1926 relating to a Vicente [Domut] ending in 11948 reflecting a driver's license conviction from 8/27/13;" (2) a notice of entry of judgment from a "case ending in 7292 for a Vicente Domut party I.D. 119548 reflecting a driving without a license conviction 3/22/2012;" and (3) "a notice of entry of judgment for a case ending in 5534 for a Vicente Domut party I.D. 119548 reflecting a driving without license conviction on 12/13/2011."

During closing argument, with respect to the No Motor Vehicle Insurance charge, Domut contended the "good faith lack of knowledge" defense applied because the evidence demonstrated he did not own the car he was driving when cited. Domut argued the State failed to disprove the defense because it did not present evidence demonstrating he knew the car was uninsured or that he should have been on notice to ask whether the car was insured before driving it.

The district court rejected Domut's arguments and adjudged Domut guilty on all counts and immediately proceeded to sentencing. The State indicated it was seeking a one-year term of imprisonment for the Driving Without a License conviction, a fine of $1,500 for the No Motor Vehicle Insurance conviction, and a one-year suspension of any driver's license.

Domut's counsel requested a continuance of sentencing, stating,

> You know, at this time, I do not believe that – I believe that this is going to be something set for an appeal, and you know, I'm not prepared – I can argue sentencing. As far as this goes, I would ask to continue sentencing until I can – there can be something resolved because I don't believe that – I don't believe that this is the correct ruling. And I don't believe – I would not like to see Mr. Domut do jail time for something that he should not be doing jail time for. As far as sentencing goes, if we have to proceed today, you know, I understand the prior charges before.

The district court did not acknowledge or respond to the request to continue sentencing.

Domut's counsel then argued that a maximum sentence was inappropriate because the incident occurred over two years ago, and since then, Domut had not been driving. During his allocution, Domut told the district court that he had been driving to take his sister-in-law to the doctors for a checkup on an infection, that he believed the car was insured, and that he had not driven after being cited.

The district court stated it did not believe Domut's personal situation provided a justification for continuing to violate the law and imposed a jail term of 180 days for Driving Without a License, a fine of $1,500 and $37 in fees for No Motor Vehicle Insurance, and a suspension of any driver's license for one year.[7] The district court filed a judgment, which reflected its granting of Domut's attorney's oral motion to stay the sentence pending appeal.[8]

---

[7] Domut was also sentenced to a 30-day jail term for the failure to appear in court conviction.

[8] Despite the judgment staying the sentence, after the ICA's July 30, 2018 SDO, on August 28, 2018, one day before the ICA's August 29, 2018 Judgment on Appeal, a different district court judge issued a mittimus executing Domut's prison sentence, and Domut was temporarily taken into custody. The record does not reflect what representations were made to the judge before the mittimus was issued, but a "stipulation and order for release" was signed the same day and filed the next day; the record does not reflect when Domut was released. Execution of sentence was then continued several times. On May 28, 2019, the State objected to the defense's oral motion to continue execution of sentence, and the execution of sentence date was continued to June 4, 2019. The record again does not reflect what representations were made to the district court, but the district court again issued a mittimus to execute the stayed sentence on that date. But later that day, the State submitted an ex parte motion to recall mittimus, which

(continued. . .)

**B. ICA Proceedings**

Domut timely appealed the district court judgment to the ICA asserting that: (1) his Driving Without a License conviction should be reversed because the State failed to prove Domut did not fall into one or more of the enumerated exemptions from HRS § 286-105;[9] and (2) that his No Motor Vehicle Insurance conviction should be reversed because the State failed to negate Domut's "good faith lack of knowledge" defense.

With respect to the No Motor Vehicle Insurance conviction, Domut argued that the following evidence at trial indicated that Domut borrowed the vehicle and thus raised the "good faith lack

---

(. . .continued)
was approved, as well as another "stipulation and order" for release, which was also approved. Both documents indicate that Domut had again been taken into custody on June 4, 2019; the record is unclear when he was released.

Defendants convicted of misdemeanors, petty misdemeanors, or law violations are entitled to bail and a stay of sentence pending appeal. State v. Kiese, 126 Hawai'i 494, 510, 273 P.3d 1180, 1196 (2012). Hence, the sentencing judge appropriately ordered a stay pending appeal. But according to the record, although it appears he was quickly released each time, Domut was twice taken into custody while his appeal remained pending. The district court issued the first mittimus after the ICA's SDO, on the day before the judgment on appeal. But even if the ICA judgment on appeal had been filed a few days before the first mittimus, under Hawai'i Rules of Appellate Procedure ("HRAP") Rule 36(c)(1) (2016) and HRS § 602-59(c)(2016 & Supp. 2017), it would not have been effective until 30 days after its filing at the very earliest. Prosecuting attorneys, defense counsel, and trial courts should all ensure that there is an effective judgment on appeal under HRAP Rule 36 that would allow for execution of stayed sentences before attempting to execute a sentence.

[9] As indicated earlier, this issue was resolved against Domut's argument in Castillon, 144 Hawai'i 406, 443 P.3d 98, in which we held that a defendant bears the initial burden to produce "some evidence" to support a Hawai'i driver's license exemption based on possession of a valid license from Canada or Mexico, which Domut did not do.

of knowledge" defense under HRS § 431:10C-117(a)(4)(C): (1) Domut was transporting two passengers in the vehicle; (2) Domut was not on that date and never was the registered owner of the vehicle; and (3) the vehicle's registration was current. Citing Bolosan, Domut asserted that once evidence was adduced that the vehicle was borrowed, the State was required to prove beyond a reasonable doubt that Domut actually knew the vehicle was uninsured at the time he was operating it. The State failed to do so, Domut argued.

Domut contended that the following evidence also demonstrated that Domut had a reasonable belief the car was insured: (1) Domut readily provided Officer Becraft with the registration information; (2) the safety check, which required up-to-date insurance, apparently was not expired because Officer Becraft did not cite Domut for an expired safety check; and (3) Domut never indicated to Officer Becraft an awareness that the car was uninsured.

Citing Lee, 90 Hawai'i 130, 976 P.2d 444, the State responded that Domut bore the burden of production regarding the "good faith lack of knowledge" defense and failed to do so. The State contended that because Domut did not testify, there was no evidence he had borrowed the vehicle. The State maintained that the district court therefore properly inferred that Domut

intentionally, knowingly, or recklessly drove the vehicle without insurance.

The ICA filed a summary disposition order on July 30, 2018 affirming the district court's judgment.  Domut, SDO at 1. Citing Lee and State v. Kahaunaele, 10 Haw. App. 519, 879 P.2d 566 (1994), the ICA held that Domut was required to present some evidence raising the "good faith lack of knowledge" defense before the burden shifted to the State.  Domut, SDO at 4. According to the ICA, the evidence did not indicate any "borrower/lender relationship" between Domut and the registered owner of the vehicle sufficient to infer that Domut was a borrower entitled to the good faith borrower defense.  Domut, SDO at 5.  The ICA therefore affirmed the district court.

### III.  Standard of Review

### A.  Statutory Interpretation

"The interpretation of a statute is a question of law reviewable de novo."  Ka Pa'akai O Ka 'Āina v. Land Use Comm'n, 94 Hawai'i 31, 41, 7 P.3d 1068, 1078 (2000) (citation omitted).

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

Id.

## B.   Plain Error

> Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  Therefore, an appellate court "may recognize plain error when the error committed affects substantial rights of the defendant."  State v. Staley, 91 Hawai'i 275, 282, 982 P.2d 904, 911 (1999) (citation omitted).
>
> The appellate court "will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights."  State v. Nichols, 111 Hawai'i 327, 334, 141 P.3d 974, 981 (2006) (quoting State v. Sawyer, 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998)).  An appellate court's "power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system — that a party must look to [their] counsel for protection and bear the cost of counsel's mistakes."  Nichols, 111 Hawai'i at 335, 141 P.3d at 982 (quoting State v. Kelekolio, 74 Haw. 479, 515, 849 P.2d 58, 74–75 (1993)).

State v. Metcalfe, 129 Hawai'i 206, 222, 297 P.3d 1062, 1078 (2013).

## C.   Waiver of Jury Trial

The validity of a defendant's waiver of the right to a jury trial in a criminal case presents a question of state and federal constitutional law.  We answer questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case.  Thus, we review questions of constitutional law under the right/wrong standard.  State v. Friedman, 93 Hawai'i 63, 67, 996 P.2d 268, 272 (2000) (citations and quotation marks omitted).

15

A waiver is the knowing, intelligent, and voluntary relinquishment of a known right. Thus, to determine whether a waiver was voluntarily and intelligently undertaken, this court will look to the totality of facts and circumstances of each particular case. Friedman, 93 Hawai'i at 68, 996 P.2d at 273.

## IV. Discussion

**A. There was no evidence that Domut borrowed the vehicle; therefore, the burden of disproving the "good faith lack of knowledge" defense was never shifted to the State.**

Regarding the No Motor Vehicle Insurance conviction, Domut contends there was sufficient evidence of the "good faith lack of knowledge" defense to shift the burden of disproving the defense to the State. The "good faith lack of knowledge" defense under HRS § 431:10C-117(a)(4)(C) and Lee, 90 Hawai'i at 139, 976 P.2d at 453, is not an affirmative defense under HRS § 701-115(3) (2014).[10] Bolosan, 78 Hawai'i at 89, 890 P.2d at 676 (1995). Accordingly, it is a non-affirmative defense under HRS § 701-115(2)(a),[11] which the State has the burden of

_____

[10]   HRS § 701-115(3) provides:

> (3)  A defense is an affirmative defense if:
>     (a)  It is specifically so designated by the Code or another statute; or
>     (b)  If the Code or another statute plainly requires the defendant to prove the defense by a preponderance of the evidence.

[11]   HRS § 701-115(2)(a) provides: "If the defense is not an affirmative defense, the defendant is entitled to an acquittal if the trier of fact finds

(continued. . .)

16

disproving beyond a reasonable doubt. Locquiao, 100 Hawai'i at 202, 58 P.3d at 1249.

Whether a defense is an affirmative or non-affirmative defense, as set out in HRS § 701-115(2), "[n]o defense may be considered by the trier of fact unless evidence of the specified fact or facts has been presented." As explained in the Commentary to HRS § 701-115: "The Code establishes two classes of defenses. As to both, it places an initial burden on the defendant to come forward with some credible evidence of facts constituting the defense, unless, of course, those facts are supplied by the prosecution's witnesses." As indicated in this commentary, although the defendant has the initial burden to come forward with some credible evidence of facts constituting the defense, facts establishing a defense may also be supplied by the prosecution. Locquiao, 100 Hawai'i at 206, 58 P.3d at 1253.

The "good faith lack of knowledge" defense to the offense of No Motor Vehicle Insurance is set forth in HRS § 431:10C-117(a)(4)(C):

> (4) Any person cited under this section shall have an
> opportunity to present a good faith defense, including but
> not limited to lack of knowledge or proof of insurance.

---

(. . .continued)
that the evidence, when considered in the light of any contrary prosecution evidence, raises a reasonable doubt as to the defendant's guilt . . . ."

17

> The general penalty provision of this section shall not
> apply to:
> . . . .
> (C)  Any operator of a borrowed motor vehicle if the
> operator holds a reasonable belief that the subject vehicle
> is insured . . . .

Pursuant to the statute, the facts constituting the "good faith

lack of knowledge" defense are that (1) the defendant was the

operator of the subject motor vehicle; (2) the defendant

"borrowed" the subject vehicle; and (3) the defendant held a

reasonable belief that the subject vehicle was insured.

In this case, there is no dispute regarding (1), that Domut

was the operator of the subject motor vehicle.  With respect to

(3), in Bolosan, we reaffirmed the following holding of the ICA

in Kahaunaele:

> [T]he borrower of a motor vehicle has a statutory right to
> reasonably believe that the borrowed motor vehicle is
> insured.  Evidence that the defendant borrowed and operated
> upon a public street a motor vehicle that was not insured
> under a no-fault policy is sufficient evidence to sustain
> [the lack of knowledge defense].  The fact that the
> borrower did not consider whether or not the borrowed motor
> vehicle was insured does not negative [the] defense.
> However, if one or more relevant facts reasonably required
> the borrower to inquire, [they] then had a duty to inquire
> until [they] reasonably believed that the motor vehicle was
> insured.  The borrower's failure to satisfy that duty to
> inquire negatives [the] defense[ ].

Bolosan, 78 Hawai'i at 91 n.9, 890 P.2d at 678 n.9 (quoting

Kahaunaele, 10 Haw. App. at 531, 879 P.2d at 571).  In Domut's

case, there is no evidence of the existence of facts reasonably

requiring Domut to inquire as to whether or not the subject

motor vehicle was insured.  Therefore, pursuant to Bolosan,

18

Domut had a statutory right to reasonably believe that the subject vehicle was insured, but only if the vehicle was "borrowed."[12]

The issue in this case therefore is whether there is evidence of (2), that Domut "borrowed" the subject motor vehicle.

As argued by the State, in Lee, 90 Hawai'i 130, 976 P.2d 444, we noted that the defendant bears the burden of production that they had borrowed a vehicle owned by another. 90 Hawai'i at 140, 976 P.2d at 454 (construing the "good faith lack of knowledge" defense). Lee is consistent with HRS § 431:10C-117, which provides a defendant with "an opportunity to present a good faith defense." In Lee, we rejected the defendant's argument that, where it is unclear whether a driver is the registered owner of a vehicle, "the presumption should be that [the driver] is not the owner." Id. As there was no evidence of ownership of the subject vehicle by another, Lee did not need to address the issue of whether the defendant had "borrowed" the subject vehicle. As in Lee, however, no presumption exists

---

[12] For this reason, we need not address Domut's assertions of evidence showing that he had a reasonable belief the car was insured – that (1) Domut readily provided Officer Becraft with the registration information; (2) the safety check, which required up-to-date insurance, apparently was not expired because Officer Becraft did not cite Domut for an expired safety check; and (3) Domut never indicated to Officer Becraft an awareness that the car was uninsured.

under the statute that a subject vehicle was "borrowed."

Therefore, the defendant bears the burden of producing evidence

that the subject vehicle was "borrowed" if such evidence was not

presented in the State's case.[13]

Thus, we address whether or not there was evidence that

Domut had "borrowed" the subject vehicle.  In this regard, HRS

Chapter 431 does not define "borrow," but "this court may resort

to legal or other well accepted dictionaries as one way to

determine the ordinary meaning of certain terms not statutorily

defined."  State v. Pacquing, 139 Hawai'i 302, 312, 389 P.3d 897,

907 (2016) (citation omitted).  Black's Law Dictionary defines

"borrow" as "[t]o take something for temporary use."  Borrow,

Black's Law Dictionary (10th ed. 2014).  The Oxford Dictionary

defines "borrow" as to "[t]ake and use (something that belongs

to someone else) with the intention of returning it."[14]  A

"borrowed motor vehicle," therefore, is a motor vehicle that has

been taken for temporary use with the intention of returning it.

---

[13]    We also note that Kahaunaele was a consolidated opinion involving seven
separate defendants and evidence of "borrowing" had been presented by the
defendant or through stipulation.  Kahaunaele, 10 Haw. App. at 521-22, 879
P.2d at 567-68.  Thus, for all seven defendants, there was "some evidence" of
the second element of the defense – that defendant had "borrowed" the subject
vehicle.

[14]    Oxford Dictionaries, https://perma.cc/7VR6-ZPTV (last visited Jan. 2,
2020).

Evidence of facts constituting a defense can be those supplied by the prosecution.  Domut asserts that the evidence adduced by the State that he was transporting two passengers and/or that he was never the registered owner of the subject vehicle constitutes sufficient evidence that he had "borrowed" the subject vehicle to have shifted the burden to the State.  We disagree.

A person can operate a vehicle registered in another person's name, with or without passengers, without borrowing it.  If the fact that a vehicle was registered in someone else's name was sufficient to constitute evidence that an operator had "borrowed" a motor vehicle, then operators of motor vehicles could circumvent the No Motor Vehicle Insurance law by transferring title of a vehicle to a third or fictitious person without presenting any actual evidence of "borrowing."  Thus, Domut's contention on certiorari that there was sufficient evidence of "borrowing" to have shifted the burden to the State to disprove the "good faith lack of knowledge" defense lacks merit.

In his second question on certiorari, Domut also alleges that the ICA erred in placing a burden on him to present evidence of a "borrower/lender relationship" with the registered owner of the vehicle to assert the "good faith lack of

knowledge" defense. In this regard, we agree that the ICA erred.

HRS § 431:10C-117(a)(4)(C) allows the "good faith lack of knowledge" defense for a "borrowed motor vehicle" that the operator reasonably believes is insured. The ICA stated that "there was no evidence presented as to any borrower/lender relationship between Domut and the registered owner." Domut, SDO at 5. However, this language from the ICA's SDO is inconsistent with the statute, which does not require that the operator have "borrowed" the vehicle from the registered owner. An operator could borrow a vehicle from someone other than a registered owner and have a reasonable belief it is insured.[15] Hence, the ICA erred by requiring Domut to adduce evidence of a "borrower/lender relationship" with the registered owner of the vehicle to raise the "good faith lack of knowledge" defense. This error does not, however, require reversal of Domut's No Motor Vehicle Insurance conviction, as there was no evidence of the threshold requirement that the subject vehicle was "borrowed."

---

[15] For example, the registered owner could be a prominent member of the community who provides a vehicle to a child who is a college student, who lends the vehicle to another student for a short drive to the supermarket. The other student could have a reasonable belief that the vehicle is insured, even if they did not borrow the vehicle from the registered owner.

22

**B.    There was no valid waiver of Domut's right to jury trial.**

Domut was entitled to a jury trial on the Driving Without a License charge pursuant to article I, section 14 of the Constitution of the State of Hawai'i, as he was subject to up to one-year imprisonment as indicated in the amended complaint. Consistent with constitutional requirements, HRS § 806-60 (2014) provides that "[a]ny defendant charged with a serious crime shall have the right to trial by a jury of twelve members. 'Serious crime' means any crime for which the defendant may be imprisoned for six months or more."[16]

It is well established that Hawai'i law recognizes the right to a jury trial as a fundamental right that cannot be

---

[16]    As we stated in Gomez-Lobato, 130 Hawai'i at 477 n.12, 312 P.3d at 908 n.12:

> Although HRS § 806-60 provides that a "serious crime" for which there is a right to trial by jury means "any crime for which the defendant may be imprisoned for six months or more[,]" this court has taken into account multiple factors when determining if an offense is petty or serious, for purposes of the right to trial by jury. See State v. Ford, 84 Hawai'i 65, 69-70, 929 P.2d 78, 82-83 (1996). Three factors are analyzed to determine whether an offense is constitutionally petty or serious: "(1) treatment of the offense at common law; (2) the gravity of the offense; and (3) the authorized penalty." Id. at 70, 929 P.2d at 82; State v. Sullivan, 97 Hawai'i 259, 264, 36 P.3d 803, 809 (2001); see also State v. Lindsey, 77 Hawai'i 162, 164, 883 P.2d 83, 85 (1994) (noting the presumption that this jurisdiction will not recognize the right to a jury trial where the maximum term of imprisonment is less than thirty days). Consequently, an offense involving a term of imprisonment that is less than six months can still constitute constitutionally a "serious" crime for which there is a right to trial by jury.

relinquished absent a knowing, intelligent, and voluntary waiver. State v. Torres, 144 Hawai'i 282, 288, 439 P.3d 234, 240 (2019). While a defendant may waive the right to a jury trial, the waiver must be made knowingly, intelligently, and voluntarily. Gomez-Lobato, 130 Hawai'i at 477, 312 P.3d at 908. A waiver is the knowing, intelligent, and voluntary relinquishment of a known right. State v. Baker, 132 Hawai'i 1, 6, 319 P.3d 1009, 1014 (2014).

Whether a defendant validly waived the right to jury trial is reviewed under the totality of the circumstances surrounding a case, taking into account the defendant's background, experience, and conduct. Gomez-Lobato, 130 Hawai'i at 470, 312 P.3d at 902. A waiver is knowing and intelligent when it is made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Torres, 144 Hawai'i at 288, 439 P.3d at 240. A trial court has a "serious and weighty responsibility" with respect to jury trial waivers, and has an obligation to ensure, through an appropriate colloquy on the record, that the waiver was knowingly, intelligently, and voluntarily given. Baker, 132 Hawai'i at 6, 319 P.3d at 1014. And although we exercise the power sparingly, we have the discretion to sua sponte notice plain error affecting substantial rights even if not raised on

appeal. State v. Miller, 122 Hawai'i 92, 115, 223 P.3d 157, 180 (2010) (quoting State v. Fox, 70 Haw. 46, 56, 760 P.2d 670, 676 (1988)).

Reviewing the totality of circumstances regarding Domut's waiver of jury trial, we first note that the district court's colloquy asked no questions regarding Domut's background, education, or experience.

The district court told Domut, "on one of the charges you have a right to a trial by a jury[,]" but did not state that this right inured to the Driving Without a License charge. Domut was told he was entitled to a jury trial on one charge only, not both, implying he only had the opportunity to have a jury trial on one charge, and he was not even informed which charge that was. The district court's advisement therefore suggested that if Domut did not waive his right to a jury trial on the one charge to which he was entitled to a jury, whichever it was, he would have to undergo two trials, one with a jury and one with a judge. This suggestion was misleading because HRS § 701-109(2) (2014) provides, "[e]xcept as provided in subsection (3) of this section, a defendant shall not be subject to separate trials for multiple offense . . . arising from the same episode . . . ." The exception in HRS § 701-109(3) allows for separate trials if the court so orders, when "satisfied that

25

justice so requires." No separate trial was requested, and it is unclear whether justice could have required separate trials. Therefore, the district court's advisement was insufficient, confusing, and incorrect.[17]

The dissent regarding this issue maintains that separate trials would not have been necessary because Domut could have had a single trial with two different factfinders, with the jury adjudicating the charge with a right to jury trial and the judge adjudicating the charge without a right to jury trial, and cites to cases from other states that have followed such a process. Under Hawai'i law and procedure, however, Domut would in all likelihood have had the opportunity of having both charges tried

---

[17] The district court's failure to inform Domut of the charge to which he had a right to jury trial is analogous to our recent opinion in State v. Carlton, SCWC-17-0000419, 2019 WL 6271671 (Nov. 25, 2019). In Carlton, the ICA remanded defendant's kidnapping, robbery, and assault convictions, giving the State the option of retrial or proceeding directly to sentencing if it dismissed two of the three charges. Carlton, 2019 WL 6271671, at *2. It was only after the defense had made its sentencing argument and the defendant addressed the court that the State disclosed its decision to ask the court to sentence the defendant on the robbery charge and to dismiss the kidnapping and assault charges, after which the court sentenced the defendant to twenty years imprisonment on the robbery charge. Carlton, 2019 WL 6271671, at *3. We noted that each of the potential charges on which the defendant could be sentenced were predicated on different conduct and had different elements, and that because the defendant did not know the offense he was to be sentenced on, he was not afforded a meaningful opportunity to address the circumstances of the robbery offense. Carlton, 2019 WL 6271671, at *8. Likewise, in this case, because the district court told Domut he only had a right to jury trial on one of the charges, Domut did not know which charge he was waiving his right to jury trial for. But, as we explain, Domut was also not informed that he may have had the opportunity of having a jury trial on both charges.

by a jury. If Domut had not waived his right to a jury trial, the entire case would have been committed to the circuit court pursuant to HRPP Rule 5(b)(3)(2014), which provides in part, "If the defendant does not waive the right to a trial by jury at or before the time of entry of a plea of not guilty, the court shall commit the defendant to the circuit court for trial by jury . . . ." In addition, HRS § 604-8 (Supp. 2001) provides that "[i]n any case cognizable by a district court . . . in which the accused has the right to a trial by jury in the first instance, the district court, upon demand by the accused for a trial by jury, shall not exercise jurisdiction over the case, but shall . . . commit for trial the accused as provided by law . . . ." Thus, if Domut had not waived his right to jury trial, Domut's entire "case" would have been triable by a jury unless otherwise ordered by the circuit court.

There were additional issues with the district court's jury trial advisements. The district court told Domut that if he waived his right to a jury trial, a judge "will preside over a trial if we have a trial." Even under the process the dissent suggests, a judge "presides" over both jury and non-jury trials. Domut was not informed, however, of the fundamental distinction between bench and jury trials that if he waived his right to jury trial, one judge as compared to twelve jurors would

actually decide whether he was guilty or not.[18]  Finally, the district court was also incorrect when it informed Domut that "[i]f all twelve do not find you guilty, then you're not guilty of that particular crime."  A lack of unanimity as to guilt does not result in a defendant being "not guilty."

Thus, viewed under a totality of the circumstances, the record does not reflect a knowing and intelligent waiver of Domut's fundamental right to a jury trial.  We therefore vacate Domut's convictions on the Driving Without a License and No Motor Vehicle Insurance charges and remand the case to the district court for further proceedings consistent with this opinion.[19]

---

[18]   Gomez-Lobato referred to the following advisement regarding this point from Friedman:  "So by waiving that right means that your case will be decided by a judge, the judge alone is to decide your guilt or innocence." Gomez-Lobato, 130 Hawai'i at 470, 312 P.3d at 902 (quoting Friedman, 93 Hawai'i at 66, 996 P.2d at 271).

[19]   Domut's original sentence is no longer at issue, but we note that after the State stated its position on sentencing, including requesting one year imprisonment on the Driving Without a License conviction, Domut's counsel requested a continuance of the sentencing.  The district court did not acknowledge the request and proceeded to sentencing.  HRPP Rule 32(a) (2012) provides that "[b]efore . . . imposing sentence, the court shall address the defendant personally and afford a fair opportunity to the defendant and defendant's counsel, if any, to make a statement and present any information in mitigation of punishment."  HRPP Rule 32(a) (emphasis added).

A pre-sentence investigation and report ("PSI") is discretionary for defendants older than 21 who are convicted of misdemeanor offenses. HRS § 706-601(1)&(2)(2014).  In appropriate cases, trial courts should exercise their discretion to order PSIs for misdemeanor convictions so that they can appropriately consider HRS § 706-606 (2014) sentencing factors.  See State v. Harter, 134 Hawai'i 308, 332 n.29, 340 P.3d 440, 464 n.29 (2014) ("Had the court requested a pre-sentence report, the court would have received a report on Harter's physical and mental condition, which likely
(continued. . .)

### V.  Conclusion

Based on the reasons stated above, we vacate the ICA's August 29, 2018 judgment on appeal and the district court's judgment.  Although we believe the district court could be fair, under the circumstances, we conclude the appearance of justice would be better served if this case was remanded to a different judge than the sentencing judge.

| | |
|---|---|
| Susan L. Arnett<br>for petitioner/<br>defendant-appellant | /s/ Sabrina S. McKenna<br><br>/s/ Richard W. Pollack |
| Donald S. Guzman and<br>Renee Ishikawa Delizo<br>for respondent/<br>plaintiff-appellee | /s/ Michael D. Wilson |



---

(. . .continued)
would have more fully informed the court's sentencing decision.  HRS § 706-602(1)(b)(Supp. 2012).").  Even without ordering a PSI, the district court also had the discretion to grant defense counsel's request for a continuance for sentencing, so that Domut could "present any information in mitigation of punishment."  A court's failure to exercise discretion can constitute an abuse of discretion.  Hamilton v. Hamilton, 138 Hawai'i 185, 197, 378 P.3d 901, 913 (2016).